UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES THOMAS WESNER, JR., | § | |
| as Trustee of the Charles Wesner, Jr. | § | |
| Living Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0927-B |
| | § | |
| MARK SOUTHALL, PRINCIPLE | § | |
| MANAGEMENT GROUP INC., | § | |
| ASSOCIATIONS INC. d/b/a | § | |
| ASSOCIA, ESTATES OF WINDSOR | § | |
| RIDGE HOMEOWNERS' | § | |
| ASSOCIATION INC., ASSOCIA | § | |
| CLIENT SHARED SERVICE CENTER | § | |
| INC. d/b/a CSSA, WHITTEN AND | § | |
| WHITTEN PLLC, and ADAM T. | § | |
| WHITTEN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are five motions to dismiss: Defendants Whitten & Whitten, PLLC

("Whitten Firm") and Adam Whitten ("Whitten") (collectively, "Whitten Defendants")'s Motion

to Dismiss (Doc. 40); Defendants Associations, Inc. ("Associa") and Associa Client Shared Service

Center, Inc. ("CSSC")'s Motion to Dismiss (Doc. 41); Defendant Principal Management Group, Inc.

("PMG")'s Motion to Dismiss (Doc. 42); Defendant Mark Southall's Motion to Dismiss (Doc. 43);

and Defendant Estates of Windsor Ridge Homeowners' Association, Inc. ("Estates of Windsor

Ridge")'s Motion to Dismiss (Doc. 44).[1] As explained below, the Motions are **GRANTED in part** and **DENIED in part**.

Specifically, Plaintiff Charles Thomas Wesner, Jr.'s claims for declaratory judgment against all Defendants; his claims against Estates of Windsor Ridge for violation of the Texas Fair Debt Collections Act, breach of contract, and tortious interference of contract; his claims against Associa and CSSC for tortious interference with contract; and his claims against PMG and Southall for tortious interference with contract, fraud, and conspiracy to commit fraud all survive. Wesner's other claims are **DISMISSED WITHOUT PREJUDICE**.

## I.

## BACKGROUND

William Shakespeare famously posited, "A rose by any other name would smell as sweet." *Romeo and Juliet*, Act II, Scene II, lines 43–44. This case raises an analogous question: whether a homeowner's association ("HOA") by any other name can still impose HOA fees. Plaintiff Charles Thomas Wesner, Jr. is trustee of the Charles Thomas Wesner, Jr. Living Trust (the "Trust") and the record owner of 2312 Lookout Lane (the "Property") in Denton, Texas. Doc. 38, Am. Compl., ¶¶ 1.01, 3.02. The Property is part of the Windsor Ridge subdivision. *Id.* ¶ 3.02. Like many subdivisions, Windsor Ridge subdivision has an HOA. *See id.* ¶¶ 2.01, 3.03.

---

[1] The last four motions to dismiss (Docs. 41–44) raise nearly identical arguments. For the sake of readability, the Court will cite the arguments made in Associa's Motion to Dismiss (Doc. 41). Unless the Court notes otherwise, these citations refer to Associa's arguments and the identical arguments made by PMG, Southall, and Estates of Windsor Ridge in their respective motions.

The Windsor Ridge HOA management certificates state the name of the HOA is "Windsor Ridge Homeowners Association." *Id.* ¶ 3.03. Collectively, Associa, CSSC, and PMG purported to be the management company for the HOA. *Id.* ¶ 2.07. Wesner alleges he received "at least 60" HOA-related assessments that were either falsely sent in the name of "Windsor Ridge Homeowners Association"—the "real" HOA—or were sent in the name of another entity. *Id.* ¶¶ 3.01, 3.34. He cites Estates of Windsor Ridge, "Windsor Ridge HOA, Inc.," and "Windsor Ridge Homeowners' Association, Inc." as examples of entities that "are not a homeowner's association for the Windsor Ridge owners" but nonetheless charged him assessments. *Id.* ¶ 3.01. Wesner alleges he is not a member of these entities, and they are not authorized to collect assessments from him. *Id.*

Wesner purchased the Property on January 8, 2018, as a residence for a Trust beneficiary, Cesar Rosales. *Id.* ¶ 3.02. As a lot owner in Windsor Ridge subdivision, Wesner is an automatic member of the Windsor Ridge Homeowners' Association. *Id.* ¶ 2.01. In September 2018, Wesner received an invoice for $681.94 from "Windsor Ridge c/o [PMG]." *Id.* ¶ 3.10. Wesner called Southall, the president of PMG, and objected to the charge. *Id.* ¶ 3.11. Southall explained the invoice included a $200 assessment that the previous owner failed to pay. *Id.* ¶ 3.14. He promised to send Wesner a separate invoice for the $200 balance, which Wesner could pay without prejudice as to verification of the assessment amount. *Id.* ¶ 3.15. Later that day, Southall sent Wesner a copy of the Declaration of Covenants, Conditions and Restrictions ("CCR") that governed the Windsor Ridge subdivision. Id. ¶ 3.17. Thereafter, PMG sent Wesner the 2018 account history for the Property, which showed an account balance of $200 owed by Wesner. *Id.* ¶ 3.38.

About a month later, Wesner sent Southall a letter and enclosed a check for $200. *Id.* ¶ 3.37. In the letter, he stated that he was tendering the check "for Windsor Ridge . . . in reliance on my

gentlemen's agreement with [Southall] for PMG, as the Managing Agent, for PMG and Windsor Ridge to follow the law and fairly treat all Members." *Id.* PMG deposited this check into the account for Estates of Windsor Ridge, which Wesner alleges is not the real HOA for the subdivision. *Id.* ¶ 3.39.

At some point, Wesner became suspicious that something nefarious was going on. He began making various document requests to PMG, Southall, Associa, and CSSC, requiring proof of the HOA's incorporation, the legality of transfer fees, and the actual expenses of the HOA, among other things. *See id.* ¶¶ 3.24, 3.26, 3.28–.29, 3.32, 3.36, 3.41–.50, 3.73, 3.76, 3.79–.82, 3.90–.91, 3.99–.100, 3.105, 3.112–.113, 3.120. None of these requests were answered to his satisfaction. *See id.* Although Wesner was sent proof of incorporation for Estates of Windsor Ridge, Wesner alleges, "Estates [of Windsor Ridge] is not in the [governing documents for the subdivision] and is not a committee, officer or employee of Windsor Ridge Homeowners' Association, the 'Homeowners' Association' . . . required by the [governing documents]." *Id.* ¶ 3.61; *see also id.* ¶ 3.49.

PMG informed Wesner that Estates of Windsor Ridge had engaged Whitten as an attorney "in respect to [Wesner's] document requests." *See id.* ¶¶ 3.50, 3.84, 3.92. In early February 2019, Whitten and Wesner met to discuss Wesner's issues with the assessments. *See id.* ¶¶ 3.85–.86, 3.95. Before the meeting, Whitten explained that he understood Wesner's chief concern to be the legal status of the HOA entity and suggested that issue should be addressed first. *Id.* ¶ 3.94. Whitten and Wesner met but were unable to resolve the dispute. *See id.* ¶¶ 3.95, 3.101. Whitten asked Wesner three times by email to pay his assessments. *Id.* ¶ 3.121. Whitten was eventually terminated from this representation. *Id.* ¶ 3.104.

On April 26, 2021, Estates and PMG held a hearing with Wesner regarding the assessments, but the hearing ended without resolution of the issues. *Id.* ¶¶ 3.110–.111, 3.114. The parties were unable to resolve their dispute, and Wesner has continued to receive invoices from Estates of Windsor Ridge, Associa, and PMG. *Id.* ¶ 3.101. The total amount sought is $836.97. *Id.* ¶ 3.117.

On April 26, 2022, Wesner sued current Defendants and now-dismissed Defendants Wyatt Francis, Susan Denney, Lisa Hildinger, and Scott Martin in this Court. Doc. 1, Compl. He alleged violations of the Federal Debt Collection Practices Act, the Texas Fair Debt Collection Act, and Texas Deceptive Trade Practices Act, breaches of fiduciary duty and contract, usury, intentional interference with contract, fraud, and a declaratory judgment. *Id.* Francis, Denney, Hildinger, and Martin were never served with process, and the Court dismissed the claims against them. Doc. 26, Order. The remaining Defendants filed motions to dismiss (Docs. 14, 17–19, 23). Wesner sought leave to amend, which the Court granted. Doc. 35, Order. Wesner filed his Amended Complaint (Doc. 38), which Defendants moved to dismiss (Docs. 40–44).[2] The Court considers these Motions to Dismiss (Docs. 40–44) below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which

---

[2] In his Amended Complaint, Wesner also asserted claims against Francis, Denney, Hildinger, and Martin, *see* Doc. 38, Am. Compl., ¶¶ 1.07–.10, 4.01–.14, but the Court again dismissed these claims for failure to serve, Doc. 52, Order.

relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alterations and internal quotations omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration and internal quotations omitted).

## III.

## ANALYSIS

Because attorney immunity is an absolute defense, the Court first addresses whether Whitten Defendants are entitled to attorney immunity. The Court then considers Wesner's claims. Finally, the Court addresses whether to grant Wesner leave to amend his complaint.

A.    *Attorney Immunity*

Whitten Defendants assert attorney immunity bars Wesner's claims against them because "all of Whitten[] [Defendants'] actions are 'the kind of conduct' attorneys undertake while discharging their professional duties to a client." Doc. 40, Whitten Mot., ¶¶ 15–18 & n.4 (quoting *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 67 (Tex. 2021)). Wesner responds, "An attorney is not immune from suit for participating in 'independently fraudulent activities' that fall outside the scope of the attorney's representation of a client." Doc. 50, Resp., 10 (quoting *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020)). He argues, "[Wesner] has alleged that the Whitten Defendants engaged in fraudulent activities and dismissal of the claims against the Whitten Defendants at the motion to dismiss stage, without discovery, would be premature." *Id.*

Attorneys and law firms in Texas are generally immune from third party liability for legal services provided in the representation of a client. *See, e.g.*, *Haynes & Boone*, 631 S.W.3d at 76, 81. In Texas, attorney immunity is an affirmative defense "intended to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (internal quotation omitted). Under Texas law, "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016).

Dismissal under Rule 12(b)(6) may be granted based on a successful affirmative defense if the defense appears on the face of the complaint. *See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006); *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017) ("Although Texas courts occasionally grant attorney immunity at the motion to dismiss stage,

in those cases, the scope of the attorney's representation—and thus entitlement to the immunity—was apparent on the face of the complaint."). "[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense." *Kelly*, 868 F.3d at 375 (citing *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)).

The Supreme Court of Texas clarified what an attorney must show to meet this burden in two recent cases: *Haynes & Boone*, 631 S.W.3d 65 and *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40 (Tex. 2021). The court "summariz[ed] [its] jurisprudence" as follows. *See Haynes & Boone*, 631 S.W.3d at 78.

> [A]ttorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.

*Id.*[3] This "immunity applies in all adversarial contexts in which an attorney has a duty to zealously

_____

[3] Thus, Wesner is technically correct that "[a]n attorney is not immune from suit for participating in 'independently fraudulent activities' that fall outside the scope of the attorney's representation of a client." *See* Doc. 50, Resp., 10. But "whether attorney immunity applies depends on 'the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct.'" *Haynes & Boone*, 631 S.W.3d at 76 (quoting *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018)). So, as the court in *Bethel* reaffirmed, it is the *independence* of "independently fraudulent activities," not their fraudulent nature that takes them outside the scope of attorney immunity. *See Bethel*, 595 S.W.3d at 657 ("[M]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'") (quoting *Cantey Hanger*, 467 S.W.3d at 483). Thus, Wesner's reliance on his "alleg[ations] that the Whitten Defendants engaged in fraudulent activities," *see* Doc. 50, Resp., 10, is misplaced. *See Taylor v. Tolbert*, 644 S.W.3d 637, 647 (Tex. 2022) ("[C]onduct alleged to be fraudulent does not necessarily fall outside the scope of the attorney-immunity defense.").

and loyally represent a client, including a business-transactional context." *Id.* at 67. The Court analyzes each prong in turn.

1.    Legal Services

The first prong addresses whether a "claim against [an] attorney is based on 'the kind of conduct' attorneys undertake while discharging their professional duties to a client." *Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022) (quoting *id.*). "[T]he conduct must involve 'the uniquely lawyerly *capacity*' and the attorney's *skills as an attorney*." *Id.* (quoting *Landry's*, 631 S.W.3d at 51–53). In other words, the attorney must be providing legal services.

The *Landry's* decision provides color. In *Landry's*, a non-client sued its opponent's attorneys for defamation, business disparagement, and other tortious conduct because the attorneys issued press releases repeating their client's allegations and published these press releases online and on social media. *Landry's*, 631 S.W.3d at 44–45. Although the attorneys were acting on their client's behalf in issuing and publishing these press releases, the Court held attorney immunity did not apply. *Id.* at 52–53. The court reasoned,

> Anyone—including press agents, spokespersons, or someone with no particular training or authority at all—can publicize a client's allegations to the media, and they commonly do so without the protection of immunity. While lawyers can also make such statements, attorney immunity does not apply to an activity simply because attorneys often engage in that activity.

*Id.* at 52.

Wesner only specifically alleges two actions taken by Whitten Defendants. First, Whitten met with Wesner to discuss the legal status of the HOA entity. *See* Doc. 38, Am. Compl., ¶ 3.95. Second, Whitten asked Wesner three times by email to pay his assessments. *Id.* ¶ 3.121.

The Court finds the meeting constituted legal services. Attorneys are uniquely equipped to represent a client in disputes about the legality of an entity or invoice. In discussing the legality of the assessments and HOA, Whitten doubtless used the "unique office, professional skill, training, and authority of an attorney." *See Haynes & Boone*, 631 S.W.3d at 78.

It is not clear from the Amended Complaint that Whitten's emails requesting Wesner pay his assessments constituted legal services. Many attorneys and law firms engage in collection efforts in the course of their representation of a client, as Whitten likely did in this case. However, requests to pay assessments do not require "the unique office, professional skill, training, and authority of an attorney." *See id.* This is apparent from the allegations in this case. Each Defendant has, in some form or fashion, asked Wesner to pay his assessments, and based on the Amended Complaint, it appears none of the other Defendants are lawyers. Much like the act of "publiciz[ing] a client's allegations to the media," anyone can request payment of a fee. *See Landry's*, 631 S.W.3d at 52. The Court therefore finds it is not apparent from the face of the complaint that Whitten is entitled to immunity as to his emails requesting payment. Thus, he has not carried his burden as to these emails. *See Kelly*, 868 F.3d at 375–76.

2.   Scope of Representation

The Court now turns to whether Whitten's actions in the meeting are within the scope of the representation. The only allegation concerning the scope of Whitten's representation is that Whitten was hired as "attorney in respect to [Wesner's] document requests and the documents that [Wesner] requested." *See* Doc. 38, Am. Compl., ¶¶ 3.50, 3.84. As Whitten recognized, these document requests chiefly related to "the legal status of the HOA entity." *See id.* ¶ 3.94. The Court finds Whitten's actions in the meeting fall within the scope of his representation of Estates of

Windsor Ridge. *See id.* ¶¶ 3.50, 3.84. Because Whitten's requests for payment do not constitute legal services, the Court does not address whether they fall within the scope of the representation. *See Haynes & Boone*, 631 S.W.3d at 78 (holding actions must include the "provision of 'legal' services *and* "fulfill the attorney's duties in representing the client").

3.    Conclusion

As explained above, the Court finds that some but not all of Whitten's alleged conduct satisfies the elements of attorney immunity. The Fifth Circuit has explained, "[A]ttorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." *Troice*, 816 F.3d at 346. But attorney immunity is not limited to situations where it would bar all claims against a defendant. *See, e.g., Clark v. Bank of Am., N.A.*, 2013 WL 12126785, at *2 (W.D. Tex. July 17, 2013), *report and recommendation adopted*, 2013 WL 12126351 (W.D. Tex. Oct. 1, 2013) ("[I]t may be that, unlike the FDCPA claim, particular other claims of Plaintiffs are subject to BDFTE's attorney-immunity defense."); *accord Loupe v. O'Bannon*, 824 F.3d 534, 539–41 (5th Cir. 2016) (finding prosecutorial immunity, an immunity-from-suit doctrine with similar purposes to attorney immunity, barred some but not all claims against a defendant).

Here, Wesner's claims against Whitten Defendants are barred by attorney immunity insofar as the "claims are based on [Whitten's actions in his meeting with Wesner]." *See Haynes & Boone*, 631 S.W.3d at 81. Insofar as the claims are based on Whitten's requests that Wesner pay his assessments, they are not barred by attorney immunity.

B.    *Federal Debt Collection Practices Act ("FDCPA")*

Wesner asserts claims against Associa, CSSC, PMG, and Whitten Defendants for violations of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. *See* Doc. 38,

Am. Compl., ¶¶ 4.02–.02.9. To state a claim under the FDCPA, Wesner must plausibly plead "(1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *See Hunsinger v. Sko Brenner Am., Inc.*, 2014 WL 1462443, at *3 (N.D. Tex. Apr. 15, 2014) (Fitzwater, C.J.).

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In other words, "[t]he statute contains two categories of debt collector, those who collect debts as their 'principal purpose,' and those who do so 'regularly.'" *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008) (per curiam). "The term 'debt collector' . . . . does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The "conclusory allegation that [a defendant] is a 'debt collector' is insufficient to withstand . . . [a] motion to dismiss [for failure to state a claim]." *See Verizon Emp. Benefits Comm. v. Boyer*, 2007 WL 2258685, at *2 (N.D. Tex. July 23, 2007) (Boyle, J.); *accord Williams v. Santander Consumer USA Holdings, Inc.*, 2022 WL 562896, at *5 (N.D. Tex. Feb. 24, 2022) (Fitzwater, S.J.).

### 1.   Whitten Defendants

Whitten Defendants argue Wesner's FDCPA claims should be dismissed because Wesner has not plausibly alleged Whitten Defendants are "debt collectors" under the statute. Doc. 40, Whitten Mot., ¶¶ 20, 22. Whitten Defendants contend that Wesner has not shown that Whitten Defendants'

principal purpose is debt collection or that Whitten Defendants regularly collect debts. *Id.* ¶ 22. Wesner does not respond to this contention. *See* Doc. 50, Resp., 5–6.

"Attorneys qualify as debt collectors for purposes of the FDCPA when they regularly engage in consumer debt collection, including but not limited to litigation on behalf of a creditor client." *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 330 (5th Cir. 2017) (citing *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)). In determining whether a law firm is a debt collector, courts "consider a variety of factors," including

> the number of lawsuits filed and collection letters mailed, the percentage of time debt collection activities consume, the share of total lawsuits filed that were dedicated to debt collection, the number of creditor clients and the length of the firm's relationship with them, the frequency and nature of the non-collection work in which the firm engages, and the number of firm attorneys and other employees dedicated to debt collection activities.

*Reyes v. Steeg Law, L.L.C.*, 760 F. App'x 285, 287 (5th Cir. 2019) (per curiam).

The Court agrees that Wesner has not plausibly alleged that Whitten Defendants are debt collectors. Wesner's Complaint does not allege that Whitten regularly engages in consumer debt collection, only that Whitten was retained by Estates of Windsor Ridge in connection with this dispute. *See, e.g.*, Doc. 38, Am. Compl., ¶¶ 3.84, 3.94. And the Amended Complaint does not allege that Whitten's principal purpose is debt collection. Nor does the Amended Complaint does not contain allegations allowing the Court to consider the "variety of factors" relevant to whether Whitten Firm is a debt collector. *See Reyes*, 760 F. App'x at 287. Thus, Wesner has not shown Whitten Firm is a debt collector. Without more, Wesner's conclusory allegation that Whitten Defendants are debt collectors, *see* Doc. 38, Am. Compl., ¶ 4.02.3, is insufficient to state a claim. *See Verizon Emp. Benefits*, 2007 WL 2258685, at *2. Therefore, Wesner has not plausibly alleged that

Whitten Defendants are "debt collectors," and the Court **DISMISSES** Wesner's claims against Whitten Defendants for breach of the FDCPA.

### 2.   Associa, CSSC, and PMG

Associa, CSSC, and PMG also argue Wesner's FDCPA claims should be dismissed because Wesner has not plausibly alleged that they are debt collectors under the FDCPA. Associa, CSSC, and PMG argue they are not debt collectors under the statute because the statutory definition excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *E.g.*, Doc. 41, Associa Mot., ¶ 21 (quoting 15 U.S.C. § 1692a(6)(F)(iii)). Wesner contends these arguments "essentially ask the Court to grant summary judgment." *See id.* at 5. He continues, "The pleadings in this case do not conclusively establish that [Associa, CSSC, and PMG] fit within that exception, and therefore, dismissal of the FDCPA claims is not proper." *See* Doc. 50, Resp., 6.

The Court agrees that Wesner has not plausibly alleged that Associa, CSSC, and PMG are debt collectors. A person is not a debt collector if he is attempting to collect a debt that was not in default when he obtained it. 15 U.S.C. § 1692a(6)(F). Thus, a court may dismiss an FDCPA claim when a plaintiff does not allege that he was in default at the time the defendant began servicing his loans. *See, e.g.*, *Brumberger v. Sallie Mae Servicing Corp.*, 84 F. App'x 458, 459 (5th Cir. 2004) ("Brumberger does not allege that he was in default at the time Sallie Mae began servicing his loans. Thus, Brumberger fails to show in his complaint that he is entitled to relief under the FDCPA, and the district court correctly dismissed his claim under [Rule] 12(b)(6)."). Wesner does not allege he was in default when Associa, CSSC, and PMG began servicing his loans. Therefore, Wesner has not

plausibly alleged that Associa, CSSC, and PMG are "debt collectors," and the Court **DISMISSES** Wesner's claims against Associa, CSSC, and PMG for breach of the FDCPA.

C.     *Texas Fair Debt Collection Act ("TDCA")*

Wesner asserts claims against "Defendants, jointly and severally," for violations of the Texas Fair Debt Collections Act ("TDCA"), Tex. Fin. Code §§ 392.001–.404. *See* Doc. 38, Am. Compl., ¶¶ 4.03–.03.12. To state a claim under the TDCA, Wesner must plausibly plead "(1) the debt at issue is a consumer debt; (2) Defendants are debt collectors within the meaning of the TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against [Wesner]; and (5) [Wesner] was injured as result of Defendants' wrongful act." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013).

"The TDCA has a two-tiered structure that includes both 'third-party debt collectors' . . . and 'debt collectors.'" *Genender v. Kirkwood*, 506 S.W.3d 508, 514 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting Tex. Fin. Code § 392.001(6)). One key distinction between the two is whether the person collecting a debt originated the debt. A "third-party debt collector" must be collecting a debt for another. *See* Tex. Fin. Code § 392.001(7) ("'Third-party debt collector' [under the TDCA] means a debt collector, as defined by [the FDCPA] . . . ."); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (holding a "debt collector" under the FDCPA must be collecting a debt for another). By contrast, a "debt collector" must be collecting a debt he originated. *See Scarbrough v. JPMorgan Chase Bank, N.A.*, 2022 WL 2373725, at *10 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, 2022 WL 2359645 (S.D. Tex. June 30, 2022) ("McCarthy & Holthus does not qualify as a debt collector under § 392.001(6) because that section applies only to creditors seeking to collect debts for themselves.") (collecting cases).

The TDCA's definition of "third-party debt collector" borrows the definition of "debt collector" from the FDCPA. Tex. Fin. Code § 392.001(7). It generally does not include an attorney collecting a debt as an attorney. *Id.* However, an attorney does qualify as a third-party debt collector if "the attorney has nonattorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts." *Id.* "In sum, a third-party debt collector under the TDCA includes any debt collector under the FDCPA with the exception of attorneys that meet certain circumstances." *Scarbrough*, 2022 WL 2373725, at *10.

By contrast, a "debt collector" is "a person who directly or indirectly engages in debt collection . . . ." Tex. Fin. Code § 392.001(6). Under the statute, "debt collection" is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). Although the TDCA does not explicitly state that a "debt collector" is a person who engages in debt collection of a debt they originated, courts have given the TDCA this construction to reconcile the statute's somewhat circular terminology. *See, e.g.*, *Scarbrough*, 2022 WL 2373725, at *10 (collecting cases).

### 1.   Whitten Defendants

Whitten Defendants argue Wesner's TDCA claims should be dismissed because Wesner has not plausibly alleged Whitten Defendants are debt collectors or third-party debt collectors under the statute. *See* Doc. 40, Whitten Mot., ¶¶ 26–29. Specifically, Whitten Defendants argue Wesner has not alleged that (1) Whitten Defendants were attempting to collect a debt Wesner owed to them or (2) Whitten Defendants have any nonattorney employees that regularly engage in debt collection. *Id.* ¶¶ 26–27. Wesner does not respond to these arguments. *See* Doc. 50, Resp., 6.

The Court agrees that Wesner has not plausibly alleged Whitten Defendants are "debt collectors" under the TDCA. Because Wesner has not alleged Whitten Defendants are creditors attempting to collect a debt for themselves, he has not alleged Whitten Defendants are "debt collectors" under the TDCA. *See, e.g.*, *Scarbrough*, 2022 WL 2373725, at *10.

Neither has he alleged Whitten Defendants are "third-party debt collectors" under the TDCA. As explained in Section B, *supra*, Whitten Defendants are not "debt collectors" under the FDCPA because Wesner has not shown that Whitten Defendants' principal purpose is debt collection or that they regularly collect debts. And Wesner has not alleged that Whitten Defendants "ha[ve] nonattorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts." *See* Tex. Fin. Code § 392.001(7). Therefore, Wesner has not plausibly alleged that Whitten Defendants are "debt collectors" or a "third-party debt collectors" under the TDCA, and the Court **DISMISSES** Wesner's claims against Whitten Defendants for breach of the TDCA.[4]

### 2.    Associa, CSSC, PMG, and Southall

Associa, CSSC, PMG, and Southall argue Wesner's TDCA claims should be dismissed because Wesner has not plausibly alleged that they are "third-party debt collectors"[5] under the

---

[4] Within the Fifth Circuit, there is a split of authority concerning whether attorneys are immune from suit for violations of the TDCA. *See Scarbrough*, 2022 WL 2373725, at *9 (collecting cases). The Fifth Circuit has not yet addressed the issue. Because Wesner fails to state a claim against Whitten Defendants for violation of the TDCA, the Court does not address the question.

[5] It is unclear from the Amended Complaint and Response whether Wesner alleges Associa, CSSC, PMG, and Southall are "debt collectors" as well as "third-party debt collectors" under the TDCA. *See* Doc. 38, Am. Compl., ¶¶ 4.03–.03.12; Doc. 50, Resp., 6. Based on the allegations in the Amended Complaint, the TDCA definition of "debt collector" does not apply to Associa, CSSC, PMG, and Southall because they are not creditors attempting to collect a debt for themselves. *See, e.g.*, *Scarbrough*, 2022 WL 2373725, at *10. The

TDCA. Specifically, they argue they are not "third-party debt collectors" under the TDCA because the FDCPA definition of "debt collectors" excludes "an entity who collects a debt which was not in default at the time it was obtained by such person." *E.g.*, Doc. 41, Associa Mot., ¶ 24. Wesner again counters, "The pleadings in this case do not conclusively establish that [Associa, CSSC, PMG, and Southall] fit within that exception, and therefore, dismissal of the TDCA claims is not proper." Doc. 50, Resp., 6.

The Court agrees that Wesner has not plausibly alleged Associa, CSSC, PMG, and Southall are "third-party debt collectors" under the TDCA. As noted above, a "third-party debt collector" under the TDCA is "a debt collector, as defined by [the FDCPA]." Tex. Fin. Code § 392.001(7). Under the FDCPA, a person is not a debt collector if he is attempting to collect a debt that was not in default when he obtained it. 15 U.S.C. § 1692a(6)(F). As noted in Section B, *supra*, Wesner does not allege he was in default when Associa, CSSC, and PMG began servicing his loans. Nor does he allege he was in default when Southall began servicing his loans. Therefore, Wesner has not plausibly alleged that Associa, CSSC, PMG, and Southall are "third-party debt collectors." *See Brumberger*, 84 F. App'x at 459; Tex. Fin. Code § 392.001(7). The Court **DISMISSES** Wesner's claims against Associa, CSSC, PMG, and Southall for breach of the TDCA.

---

Court therefore construes the Amended Complaint as alleging only that Associa, CSSC, PMG, and Southall are "third-party debt collectors" under the TDCA. *See Ruiz de Balderas v. ETX Successor Athens*, 2020 WL 1479583, at *7 (E.D. Tex. Mar. 4, 2020), *report and recommendation adopted*, 2020 WL 1478563 (E.D. Tex. Mar. 26, 2020) (construing the plaintiff's TDCA claim to allege a defendant was a third-party debt collector, rather than a debt collector, because the plaintiff did not allege the defendant was attempting to collect her own debt).

3.    Estates of Windsor Ridge

Like Associa, CSSC, PMG, and Southall, Estates of Windsor Ridge argues Wesner's TDCA claims should be dismissed because Wesner has not plausibly alleged that Estates of Windsor Ridge is a "third-party debt collector" under the TDCA. *See* Doc. 44, Estates of Windsor Ridge Mot., ¶ 25. Wesner again argues dismissal is improper. Doc. 50, Resp., 6.

The Court agrees Wesner has not plausibly alleged that Estates of Windsor Ridge is a "third-party debt collector" under the TDCA. To qualify as a "third-party debt collector" under TDCA, a defendant must be collecting a debt for another. *See* Tex. Fin. Code § 392.001(7) ("'Third-party debt collector' [under the TDCA] means a debt collector, as defined by [the FDCPA] . . . ."); *Henson*, 582 U.S. at 83 (holding a "debt collector" under the FDCPA must be collecting a debt for another).

But the TDCA also applies to "debt collectors." Tex. Fin. Code § 392.001(6); *Genender*, 506 S.W.3d at 514. It is unclear from the Amended Complaint and Response whether Wesner alleges Estates of Windsor Ridge is a "debt collector" or a "third-party debt collector" under the TDCA. *See* Doc. 38, Am. Compl., ¶¶ 4.03–.03.12. Wesner could plausibly be understood to allege Estates of Windsor Ridge is a "debt collector" because, to the extent Estates of Windsor Ridge is trying to collect money from Wesner, it is attempting to collect HOA assessments on its own behalf. *Cf. Ruiz*, 2020 WL 1479583, at *7. For this reason, the Court construes the Amended Complaint as alleging Estates of Windsor Ridge is a "debt collector" under the TDCA. Because Estates of Windsor Ridge argues only that it is not a "third-party debt collector" and does not address whether it is a "debt collector" under the TDCA, *see* Doc. 44, Estates of Windsor Ridge Mot., ¶ 25, the Court **DENIES** Estates of Windsor Ridge's Motion to Dismiss as to the TDCA claim.

D.      *Texas Deceptive Trade Practices Act ("DTPA")*

Wesner asserts claims for violation of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41–.50, against "Defendants, jointly and severally." *See* Doc. 38, Am. Compl., ¶¶ 4.04–.04.11. Defendants move to dismiss these claims. Whitten Defendants argue Wesner's DTPA claims should be dismissed because Wesner does not adequately allege consumer status and because the claims are barred by the statute of limitations and attorney immunity. Doc. 40, Whitten Mot., ¶¶ 30–35. Similarly, Associa, CSSC, PMG, Southall, and Estates of Windsor Ridge argue Wesner's claims are time-barred and he has not sufficiently alleged reliance or consumer status. *See, e.g.*, Doc. 41, Associa Mot., ¶¶ 11–18. Wesner does not respond to these arguments. *See* Doc. 50, Resp. By failing to include any argument about his DTPA claims in his Response, Wesner abandoned these claims. *See In re Dall. Roadster, Ltd.*, 846 F.3d 112, 125 (5th Cir. 2017); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). The Court therefore **DISMISSES** Wesner's DTPA claims.

E.      *Breach of Fiduciary Duty*

Wesner asserts claims for breach of fiduciary duty against "Defendants, jointly and severally." *See* Doc. 38, Am. Compl., ¶¶ 4.05–.05.8. Under Texas law, "the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

A fiduciary duty may be formal or informal. *See Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005). "In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law." *Id.* at 330. "An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral,

social, domestic, or purely personal one." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997). "But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship," and courts "do not create such a relationship lightly." *Id.* at 176–77. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998).

Defendants argue Wesner's claim for breach of fiduciary duty should be dismissed because he has not alleged facts to show the existence of a fiduciary duty between Wesner and Defendants. *E.g.*, Doc. 40, Whitten Mot., ¶ 38; Doc. 41, Associa Mot., ¶¶ 25–27. Wesner responds, "Defendants voluntarily assumed a fiduciary duty toward Plaintiff when they took on activities of managing and directing the homeowners' association" and in support cites *Yeske v. Piazza del Arte, Inc.*, 513 S.W.3d 652 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Doc. 50, Resp., 9.

The Court finds Wesner has not shown the existence of a fiduciary duty. Wesner appears to argue that Defendants owe him a formal fiduciary duty through their relationships with the homeowners' association. *See id.* But *Yeske* does not support this proposition. The *Yeske* court found the Uniform Condominium Act imposed a statutory fiduciary duty on a condominium homeowners' association. *Yeske*, 513 S.W.3d at 662–63 (citing Tex. Prop. Code § 82.103). And the Uniform Condominium Act, as its name suggests, applies only to "commercial, industrial, residential, and other types of condominiums." Tex. Prop. Code § 82.002. Wesner does not allege the property at issue is a condominium unit. *See generally* Doc. 38, Am. Compl. Thus, *Yeske* does not support the existence of a formal fiduciary duty between all homeowners and their respective homeowners' associations.

Wesner has not shown an informal fiduciary duty either. An informal fiduciary duty involves a "special relationship of trust and confidence." *Associated Indem.*, 964 S.W.2d at 288. It is clear from the Amended Complaint that Wesner never trusted most of the Defendants, and what little trust he had did not rise to the level of "special relationship of trust and confidence." *See id.* The parties' relationship, as alleged in the Amended Complaint, stems entirely from the dispute that forms the basis of this case. *See generally* Doc. 38, Am. Compl. These allegations are insufficient to establish an informal fiduciary duty. *Cf. Gooden v. Mackie*, 2020 WL 714291, at *6 (S.D. Tex. Jan. 23, 2020), *report and recommendation adopted*, 2020 WL 710340 (S.D. Tex. Feb. 12, 2020) ("Because Plaintiff has failed to allege any relationship with the Removing Defendants other than that of mortgagor, mortgagee, and mortgage servicer, [Plaintiff did not establish] the existence of an informal fiduciary relationship."). Because Wesner has not shown a fiduciary duty, formal or informal, the Court **DISMISSES** Wesner's breach of fiduciary duty claims.

In light of the Court's dismissal of Wesner's breach of fiduciary duty claims, the Court also denies Wesner's request for an accounting. *See Yeske*, 513 S.W.3d at 675 ("To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting.").

F.    *Usury*

Wesner alleges, "Defendants, jointly and severally, attempted to collect usury in the name of Windsor Ridge Homeowners' Association, Inc. from [Wesner]." *See* Doc. 38, Am. Compl., ¶ 4.06. Under Texas law, "[t]o prevail on a claim of usury, a party must prove (1) a loan of money, (2) an absolute obligation to repay the principal, and (3) the exaction of greater compensation than is allowed by law for the borrower's use of the money." *Williams v. Bell*, 402 S.W.3d 28, 36 (Tex.

- 22 -

App.—Houston [14th Dist.] 2013, pet. denied). "The basis of the action is a claim or demand for usury made by the creditor . . . . Whether the debtor actually pays off the loan is immaterial." *Danziger v. San Jacinto Sav. Ass'n*, 732 S.W.2d 300, 304 (Tex. 1987).

Defendants argue Wesner's usury claims should be dismissed because Wesner fails to allege any Defendant loaned him money. *See, e.g.*, Doc. 40, Whitten Mot., ¶ 43; Doc. 41, Associa Mot., ¶ 28. The Court agrees. Wesner responds, "Texas courts routinely hold that various types of late fees, service charges, and/or finance charges constitute 'interest' and are subject to the usury statute." Doc. 50, Resp., 10. However, whether or not the late fees Defendants charged Wesner constitute interest, Wesner must show a loan of money. *See Williams*, 402 S.W.3d at 36. He has not done so; therefore, the Court **DISMISSES** Wesner's usury claims.

G.    *Breach of Contract*

Wesner claims "Defendants, jointly and severally" breached (1) the CCR for the Windsor Ridge subdivision and (2) the "gentlemen's agreement with [Southall] for PMG, as the Managing Agent, for PMG and Windsor Ridge [Homeowners' Association] to follow the law and fairly treat all Members." Doc. 38, Am. Compl., ¶¶ 3.37, 4.07–.07.3. To state a claim for breach of contract under Texas law, a plaintiff must show, "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ). It is a "universally accepted principle[] . . . that an individual must be a party to a contract in order to be bound by it." *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 581 S.W.3d 245, 251 (Tex. App.—San Antonio 2017), *aff'd*, 601 S.W.3d 616 (Tex. 2020). And "[a] contract, whether written or oral, must define its essential terms with

sufficient precision to enable the court to determine the obligations of the parties." *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex. App.—Dallas 2004, pet. denied).

Whitten Defendants, Associa, CSSC, PMG, and Southall move to dismiss, arguing they are not parties to the alleged contracts. *See* Doc. 40, Whitten Mot., ¶¶ 46–47; Doc. 41, Associa Mot., ¶¶ 29–30; Doc. 42, PMG Mot., ¶¶ 29–30; Doc. 43, Southall Mot., ¶¶ 31–32. Wesner argues, "Restrictions in a dedicatory instrument are treated as contracts between the lot owners and the homeowners' association." Doc. 50, Resp., 8. This is true. *See, e.g., Herbert v. Polly Ranch Homeowners Ass'n*, 943 S.W.2d 906, 908 (Tex. App.—Houston [1st Dist.] 1996, no writ). But Wesner does not show Whitten Defendants, Associa, CSSC, PMG, or Southall are lot owners or the homeowners' association, nor does he articulate a theory by which these nonparties are liable under the CCR. *See* Doc. 38, Am. Compl., ¶¶ 4.07–.07.3.

Wesner also fails to state a claim against Whitten Defendants, Associa, CSSC, PMG, and Southall for breach of the alleged "gentlemen's agreement." Wesner does not allege that Whitten Defendants, Associa, and CSSC are parties to the "gentlemen's agreement." *See id.* ¶¶ 3.37, 4.07–.07.1 (stating Wesner's "gentlemen's agreement" was "with [Southall] for PMG, as the Managing Agent, for PMG and Windsor Ridge to follow the law and fairly treat all Members"). And, as alleged, the "gentlemen's agreement" does not "define its essential terms with sufficient precision to enable the court to determine the obligations of the parties." *See COC Servs.*, 150 S.W.3d at 664. The only term of the agreement that Wesner alleges is "PMG and Windsor Ridge [must] follow the law and fairly treat all Members." *See* Doc. 38, Am. Compl., ¶ 3.37. This allegation of a unilateral promise is too indefinite to show a contract. *See Wolf v. United Gas Pub. Serv. Co.*, 77 S.W.2d 1091,

1093 (Tex. App.—San Antonio 1934, writ dism'd) (holding assurances of "fair and honest treatment," without more, "are too indefinite to show any contract").

Because Wesner has not shown Whitten Defendants, Associa, CSSC, PMG, and Southall are parties to the CCR or alleged the essential terms of the "gentlemen's agreement," the Court **DISMISSES** Wesner's breach of contract claims against Whitten Defendants, Associa, CSSC, PMG, and Southall. Wesner's breach of contract claims against Estates of Windsor Ridge survive because Estates of Windsor Ridge does not move to dismiss these claims. *See* Doc. 44, Estates of Windsor Ridge Mot.

## H. *Intentional Interference with Contract*

Wesner claims Defendants,[6] jointly and severally, "intentionally interfered with [Wesner's] contractual rights under the [CCR]."[7] Doc. 38, Am. Compl., ¶¶ 4.08–.08.2. Under Texas law, the elements of tortious interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review*

---

[6] Wesner initially indicates he is not asserting this claim against Estates of Windsor Ridge. *See* Doc. 38, Am. Compl., ¶ 4.08 (asserting the claim against "Southall, Whitten, Whitten Firm, Associa, PMG and CSSC"). However, he later states "Defendants', joint and several, interferences" damaged him. *Id.* ¶ 4.08.2. The Court construes the Amended Complaint as asserting tortious interference with contract claims against all Defendants.

[7] The Amended Complaint alleges intentional interference with "the contracts." *See* Doc. 38, Am. Compl., ¶ 4.08. Wesner does not elaborate on which contracts are referenced. The Court construes this as a reference to the two contracts identified in Wesner's breach of contract claims: the CCR and the "gentlemen's agreement." As explained in Section G, *supra*, the "gentlemen's agreement," as alleged, is not a legally enforceable contract because it does not "define its essential terms with sufficient precision." *See COC Servs.*, 150 S.W.3d at 664. The Court therefore analyzes the tortious interference claims as to the CCR only.

*Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "[A] person must be a stranger to a contract to tortiously interfere with it . . . ." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997).

### 1.   Associa, CSSC, PMG, Southall, and Estates of Windsor Ridge

Associa, CSSC, PMG, Southall, and Estates of Windsor Ridge argue Wesner's tortious interference claims should be dismissed because Wesner alleges that they were parties to the CCR. *See, e.g.*, Doc. 41, Associa Mot., ¶ 31; Doc. 44, Estates of Windsor Ridge Mot., ¶ 30. Wesner responds that he "is allowed to plead claims in the alternative, at least until discovery can be conducted on these issues." Doc. 50, Resp., 9.

Under Texas law, a plaintiff may plead multiple causes of action, even if they conflict, provided there is a reasonable basis for each alternative allegation. *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007). Similarly, a plaintiff may plead alternative and inconsistent facts. *See* Tex. R. Civ. P. 48; *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980).

The only Defendant Wesner explicitly alleges to be a party to the CCR is Estates of Windsor Ridge. *See* Doc. 38, Am. Compl., ¶¶ 3.17, 4.07; Doc. 50, Resp., 8 (contending Estates of Windsor Ridge is a party to the CCR or, in the alternative, is not the authorized homeowners' association for the property). However, by alleging Associa, CSSC, PMG, and Southall breached the CCR, *see* Doc. 38, Am. Compl., ¶ 4.07.1, Wesner implicitly alleges they are parties to the CCR. Similarly, Wesner does not explicitly allege Associa, CSSC, PMG, Southall, and Estates of Windsor Ridge are strangers to the CCR, but he does implicitly allege it in his tortious interference claim. *See id.* ¶¶ 4.08–.08.2.

The mere fact that these implicit assertions are inconsistent with each other is not grounds for dismissal. *See Bocanegra*, 605 S.W.2d at 851. At this stage, the law only requires that Wesner have "a reasonable basis for each alternative allegation." *See Low*, 221 S.W.3d at 615. Because

Wesner may, at this stage, plead alternative and inconsistent facts, the Court **DENIES** Associa and CSSC, PMG, Southall, and Estates of Windsor Ridge's motion to dismiss as to Wesner's tortious interference claims.

    2.    <u>Whitten Defendants</u>

Whitten Defendants argue that Wesner's tortious interference claims must be dismissed because they are barred by attorney immunity and fail to state a claim. Doc. 40, Whitten Mot., ¶¶ 48–49. Wesner does not reply to this contention. *See* Doc. 50, Resp., 8–9. The Court agrees that Wesner fails to allege how Whitten Defendants' actions proximately caused his alleged injury, the diminution of the fair market value of the Property. Thus, Wesner has not plausibly alleged a tortious interference claim against Whitten Defendants. Wesner's claims against Whitten Defendants for tortious interference with contract are **DISMISSED**.

I.    *Fraud and Conspiracy to Commit Fraud*

Wesner asserts claims for fraud and conspiracy to commit fraud against "Defendants, jointly and severally," alleging they "engaged in a conspiracy to fraudulently collect unauthorized assessments and charges from [Wesner] and usurp the powers and rights of [the real HOA]." Doc. 38, Am. Compl., ¶¶ 4.09–.09.2. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

> The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Defendants argue that Wesner has failed to plausibly allege the elements of a fraud claim. *See, e.g.*, Doc. 40, Whitten Mot., ¶ 52; Doc. 41, Associa Mot., ¶¶ 32–33. Associa, CSSC, PMG, Southall, and Estates of Windsor Ridge specifically claim Wesner has not plausibly alleged reliance. *See, e.g.*, Doc. 41, Associa Mot., ¶ 32. Wesner responds that he relied by paying the $200 assessment. Doc. 50, Resp., 9.

To show reliance, "the plaintiff must show that [he] actually relied on the defendant's representation and, also, that such reliance was justifiable." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). A person cannot actually or justifiably rely on a representation they know to be false. *See, e.g.*, *Darnell v. Rogers*, 588 S.W.3d 295, 305 (Tex. App.—El Paso 2019, no pet.). "In measuring justifiability, [courts] must inquire whether, given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (internal quotation and alteration omitted). "[A] person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Id.* (internal quotations omitted). However, a claimant's "mere suspicions" of that a representation is false are not evidence that reliance was unjustifiable. *See Advocare Int'l LP v. Horizon Lab'ys, Inc.*, 524 F.3d 679, 699 (5th Cir. 2008).

The Court agrees that Wesner has alleged reliance against Southall and PMG by alleging that he sent Southall and PMG a check for $200 to pay his assessment. *See* Doc. 38, Am. Compl., ¶ 3.37. But this check was sent only "in reliance on [Wesner's] gentleman's agreement with Mark for PMG." *See id.* Because Wesner has failed to "state with particularly the circumstances constituting" reliance

as to the remaining Defendants, the Court **DISMISSES** Wesner's claims for fraud against Associa, CSSC, Whitten Defendants, and Estates of Windsor Ridge. *See* Fed. R. Civ. P. 9(b).

Southall and PMG argue, without citation, "[P]aying under protest cannot form the basis of a fraud claim because Wesner clearly possessed knowledge of the issues about which he now complains, otherwise he would not have made payment under protest." Doc. 42, PMG Mot., ¶ 33; Doc. 43, Southall Mot., ¶ 35. While Wesner was clearly suspicious of PMG and Southall, these suspicions, without more, do not negate his allegations of reliance. *See Advocare Int'l*, 524 F.3d at 699. Wesner does not allege that he knew at the time that Southall or PMG's alleged misrepresentations were false. *See generally* Doc. 38, Am. Compl., ¶¶ 3.01–.121. Nor do Southall and PMG identify any "red flags" that indicated reliance on their representations was unwarranted. *See* Doc. 42, PMG Mot., ¶ 33; Doc. 43, Southall Mot., ¶ 35.

The elements of a civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Civil conspiracy is a "'derivative tort,' meaning it depends on some underlying tort or other illegal act." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019). As such, "a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it." *Id.* at 141. Thus, "if a plaintiff cannot adequately allege with particularity or ultimately prove an element of the underlying fraud, [a claim for conspiracy to commit fraud] also fails." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 795 (S.D. Tex. 2007). Because Wesner has failed to state a claim for fraud against Associa, CSSC,

Whitten Defendants, and Estates of Windsor Ridge, the Court also **DISMISSES** Wesner's claims for conspiracy to commit fraud as to these Defendants.

J.      *Declaratory Judgment*

Wesner seeks a declaratory judgment declaring void all assessments, collection attempts, and managing documents of Estates of Windsor Ridge. *See* Doc. 38, Am. Compl., ¶ 4.10. Whitten Defendants argue they have no connection to this request. Doc. 40, Whitten Mot., ¶ 54. The other Defendants argue the Court should exercise its discretion and decline jurisdiction over the claims. Doc. 41, Associa Mot., ¶ 35.

"The Declaratory Judgment Act . . . has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). This discretion is not absolute; instead, courts are guided by a non-exclusive list of seven relevant factors.

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and, [7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994) (internal quotation and citation omitted). Unless the court addresses and balances these factors, it abuses its discretion. *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).

The Court finds these factors heavily favor exercising jurisdiction. First, there is no pending state-court action where these claims may be fully litigated. Second, Wesner likely filed suit in anticipation of a lawsuit from at least some Defendants. Third, there is no indication of forum shopping. Fourth, there are no inequities in allowing Wesner to determine the legality of his assessments or the HOA first. Fifth, there is no indication that this forum is inconvenient for the parties or witnesses. Sixth, because the other claims arising from this dispute are being litigated in this Court, retaining jurisdiction would serve the purposes of judicial economy. And seventh, the Court is not being asked to construe a state judicial decree. In sum, the factors heavily support exercising jurisdiction over Wesner's declaratory judgment claims.

Whitten Defendants argue the declaratory judgment claim should be dismissed as to them because they "ha[ve] no connection to the declaratory judgment action." Doc. 40, Whitten Mot., 27. Although most of the relief sought would not affect Whitten Defendants, Wesner asks the Court to declare void the "collection letters/emails," some of which were sent by Whitten. Doc. 38, Am. Compl., ¶ 4.10. Thus, based on the facts alleged, the Court cannot conclude that Whitten Defendants have "no connection" to the action.

Estates of Windsor Ridge, Associa, CSSC, Southall, and PMG cursorily raise several other arguments in favor of partial dismissal of Wesner's declaratory judgment claim. *See, e.g.*, Doc. 41, Associa Mot., ¶¶ 36–38. "[D]espite the natural focus on the allegations of the operative pleading, the movant has the burden on a motion to dismiss under Rule 12(b)(6)." *Cantu v. Guerra*, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021). Given the limited basis provided, the Court finds "additional assessment would essentially amount to judicial screening of [Wesner's declaratory

judgment claim]." *See id.* Because "Rule 12(b)(6) is not a judicial screening mechanism," the Court does not address these arguments. *See id.*

K.      *Leave to Amend*

Wesner has not sought leave to amend, but the Court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a). The Court notes that Wesner has already amended his complaint once. However, the Court finds it appropriate to give Wesner one final opportunity to amend his complaint. If Wesner wishes to amend his complaint, he must do so within **THIRTY (30) days** of this Order.

## IV.

## CONCLUSION

In summary, Plaintiff Charles Thomas Wesner, Jr.'s surviving claims are:

- Declaratory judgment against all Defendants;

- Violation of the TDCA against Estates of Windsor Ridge;

- Breach of contract against Estates of Windsor Ridge;

- Tortious interference with contract against Estates of Windsor Ridge, Associa, CSSC, Southall, and PMG; and

- Fraud and conspiracy to commit fraud against Southall and PMG.

Wesner's other claims are **DISMISSED WITHOUT PREJUDICE**. If Wesner wishes to amend his complaint, he must do so within **THIRTY (30) days** of this Order.

SO ORDERED.

SIGNED: April 18, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE