IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES THOMAS WESNER, JR. | § | |
| as Trustee of the Charles Wesner, | § | |
| Jr. Living Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-927-B |
| | § | |
| MARK SOUTHALL, PRINCIPLE | § | |
| MANAGEMENT GROUP INC., | § | |
| ASSOCIATIONS INC. d/b/a | § | |
| ASSOCIA, ESTATES OF WINDSOR | § | |
| RIDGE HOMEOWNERS' | § | |
| ASSOCIATION INC., ASSOCIA | § | |
| CLIENT SHARED SERVICE | § | |
| CENTER | § | |
| INC. d/b/a CSSC, WHITTEN AND | § | |
| WHITTEN PLLC, ADAM T. | § | |
| WHITTEN, WYATT FRANCIS, | § | |
| BILLY | § | |
| RAY SMITH, ELIZABETH | § | |
| FALCON, | § | |
| MATTHEW BRYANT, LISA | § | |
| HILDINGER, SCOTT MARTIN, and | § | |
| SUSAN DENNEY, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants Whitten & Whitten, PLLC ("Whitten Firm") and Adam Whitten

("Whitten") (collectively, "Whitten Defendants") have filed a Motion to Dismiss

Plaintiff's Second Amended Complaint for Failure to State a Claim, *see* Dkt. No. 63,

which United States District Judge Jane J. Boyle has referred to the undersigned United States Magistrate Judge for hearing, if necessary, and findings, conclusions, and a recommendation under 28 U.S.C. § 636(b), *see* Dkt. No. 64. Whitten Defendants request "that the Court sign and cause to be entered an order dismissing with prejudice Wesner's Second Amended Complaint (Doc. 57) in its entirety as it relates to every claim against [Whitten Defendants]" and "denying Wesner the opportunity to replead his Second Amended Complaint against" Whitten Defendants. Dkt. No. 63 at 30.

Plaintiff Charles Thomas Wesner, Jr. has not filed a response, and his time to do so has expired. *See* N.D. TEX. L. CIV. R. 7.1.

For the reasons and to the extent explained below, the undersigned recommends that the Court grant in part and deny in part Defendants Whitten & Whitten, PLLC and Adam T. Whitten's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Dkt. No. 63].

## Background

As Judge Boyle previously explained,

[o]n April 26, 2022, Wesner sued current Defendants and now-dismissed Defendants Wyatt Francis, Susan Denney, Lisa Hildinger, and Scott Martin in this Court. Doc. 1, Compl. He alleged violations of the Federal Debt Collection Practices Act, the Texas Fair Debt Collection Act, and Texas Deceptive Trade Practices Act, breaches of fiduciary duty and contract, usury, intentional interference with contract, fraud, and a declaratory judgment. *Id.* Francis, Denney, Hildinger, and Martin were never served with process, and the Court dismissed the claims against them. Doc. 26, Order. The remaining Defendants filed motions to

-2-

dismiss (Docs. 14, 17-19, 23). Wesner sought leave to amend, which the Court granted. Doc. 35, Order. Wesner filed his Amended Complaint (Doc. 38), which Defendants moved to dismiss (Docs. 40-44).

Dkt. No. 54 at 5.

The Court granted those motions in part but denied the motions as to Wesner's claims for

- Declaratory judgment against all Defendants;

- Violation of the TDCA against Defendant Estates of Windsor Ridge Homeowners' Association, Inc. ("Estates of Windsor Ridge");

- Breach of contract against Defendant Estates of Windsor Ridge;

- Tortious interference with contract against Defendants Estates of Windsor Ridge, Associations, Inc. ("Associa"), Associa Client Shared Service Center, Inc. ("CSSC"), Mark Southall, and Principal Management Group, Inc. ("PMG"); and

- Fraud and conspiracy to commit fraud against Defendants Southall and PMG.

*Id.* at 32. As to the dismissed claims, the Court dismissed the claims without prejudice "to give Wesner one final opportunity to amend his complaint" and ordered that, "[i[f Wesner wishes to amend his complaint, he must do so within THIRTY (30) days of this Order." *Id.*

Wesner then filed Plaintiff's Second Amended Complaint and Application for Declaratory and Injunctive Relief, *see* Dkt. No. 57 (the "2dAC"), which only Whitten Defendants have moved to dismiss, *see* Dkt. No. 63; *see also* Dkt. Nos. 58, 59, 60, 61, 62 (answers).

Whitten Defendants move to dismiss all claims against them with prejudice because:

- "Attorney immunity bars Wesner's claims against" Whitten Defendants;

- "The declaratory judgment claims fail both because of [Whitten Defendants'] underlying attorney-immunity and because [Whitten Defendants'] past actions do not give rise to a present case or controversy between Wesner and" Whitten Defendants;

- "Whitten is immune from Wesner's Texas Debt Collection Act claims, and regardless he is neither a 'debt collector' nor a 'third-party debt collector' under the TDCA";

- "Whitten is immune from Wesner's intentional interference with contracts claims, which are nevertheless barred because Whitten cannot interfere with a contract to which his former client is a party" and

- "An injunction against Whitten is inappropriate because Whitten is not engaging in any actions the Court can enjoin."

Dkt. No. 63 at 2; *see also id.* at 8-9. And Whitten Defendants contend that "[t]he Court should deny Plaintiff a further opportunity to replead his allegations against Whitten because the Court already gave [Wesner] two prior opportunities" and because "further amendments would be futile." *Id.* at 9.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic

recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

## Analysis

As Judge Boyle did when addressing the motions to dismiss Wesner's first amended complaint, "[b]ecause attorney immunity is an absolute defense, the [undersigned] first addresses whether Whitten Defendants are entitled to attorney immunity." Dkt. No. 54 at 6.

The undersigned then considers Wesner's claims in his 2dAC against Whitten Defendants. Although Wesner engages in a form of "lumping" or "shotgun pleading" by referring to "Defendants" – usually accompanied by "jointly and severally" or "joint

and several" – in every cause of action, the Court should determine that Wesner's pleaded claims against Whitten Defendants include those that he specifies that he is raising against Whitten Defendants: 1) Federal Declaratory Judgment Act; 2) The Texas Fair Debt Collection Act; 3) Tortious Interference with Contract; and 4) Application for Injunctive Relief. *See* Dkt. No. 57 at 36-57. "When the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together or calling them collectively ['Defendants'] these allegations are properly disregarded unless the reference to [particular defendants] can be clearly inferred." *Staten v. City of Dallas*, No. 3:19-cv-843-L-BN, 2020 WL 1902573, at *12 (N.D. Tex. Jan. 17, 2020) (cleaned up), *rep. & rec. adopted*, 2020 WL 548373 (N.D. Tex. Feb. 4, 2020). The Court should only also consider the claim for Continuing Fraud and Conspiracy to Commit Fraud, as Whitten Defendants do in their motion to dismiss, *see* Dkt. No. 63 at 26-27, and otherwise disregard the allegations and causes of action as to which any references to Whitten Defendants in the 2dAC cannot be clearly inferred.

"Finally, the [undersigned] addresses whether [the Court should] grant Wesner leave to amend his complaint" a third time to replead claims against Whitten Defendants. Dkt. No. 54 at 6.

But, before all that, the undersigned first addresses the effect of Wesner's failure to file a response to Whitten Defendants' latest motion to dismiss.

I.  <u>Effect of Failing to File a Response to a Motion to Dismiss</u>

When a non-moving party files a response to a motion to dismiss and fails to include an argument about a claim that the motion seeks to have the Court dismiss, the Court may determine that the nonmoving party has abandoned the unaddressed claim. *See* Dkt. No. 54 at 20 (citing *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *accord Maynard v. PayPal, Inc.*, No. 3:18-cv-259-D, 2019 WL 3552432, at *3 (N.D. Tex. Aug. 5, 2019) ("A party may abandon its claim when it fails to pursue the claim beyond the complaint. *See, e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983).")). In the published decisions in this line of Fifth Circuit cases supporting a district court's authority for finding claims or theories abandoned, the nonmoving party filed a response to the motion. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *In re Dall. Roadster*, 846 F.3d at 126; *Black*, 461 F.3d at 588 n.1.

But, when a nonmoving party does not file any response to a motion to dismiss, the Court cannot properly grant "the motion to dismiss for failure to state a claim solely because the [nonmoving party] failed to oppose the motion." *Webb v. Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012) (citing *John v. La.*, 757 F.2d 698, 707-10 (5th Cir. 1985) ("[A]lthough we have endorsed the adoption of local rules that require

parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." (citing and discussing *Ramsey v. Signal Delivery Service, Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980); *Arundar v. DeKalb Cty. Sch. Dist.*, 620 F.2d 493, 493-95 (5th Cir. 1980); *Boazman v. Economics Lab., Inc.*, 537 F.2d 210, 213-14 (5th Cir. 1976); *Woodham v. Am. Cystoscope Co.*, 335 F.2d 551, 551, 553, 556-57 (5th Cir. 1964))).

As the United States Court of Appeals for the Fifth Circuit has explained,

Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6).

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (footnote omitted; citing *John*, 757 F.2d at 707-10; *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.")).

The rationale underlying these two lines of authority appears to be that the nonmovant must – at least by affirmatively filing a response – take some action to be considered to have abandoned a claim, theory, or defense. And, by dismissing claims under Federal Rule of Civil Procedure 12 based on only a nonmovant's lack of action at all (that is, not filing a response that Rule 12 itself does not require to be filed), a district court would be improperly dismissing with prejudice without the findings or factual support required under either Rule 12 or Federal Rule of Civil Procedure 41(b)

for such a dismissal. *See Servicios Azucareros*, 702 F.3d at 806; *Webb*, 457 F. App'x at 452-54 & n.4; *John*, 757 F.2d at 707-10.

And, even if these two lines of authority cannot be reconciled with this bright-line distinction, "[t]he rule in this circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit (absent an intervening holding to the contrary by the Supreme Court or this court en banc)." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006); *accord United States v. Sanchez-Pena*, 336 F.3d 431, 444 n.62 (5th Cir. 2003) ("When faced with conflicting panel opinions, the earlier controls our decision." (cleaned up)). This suggests that the published decisions cited and relied on in *John*, 757 F.2d at 707-10, which appear to predate any decisions setting forth the abandonment doctrine, would – at least where a nonmovant has not filed any response to a motion to dismiss – control.

Under these governing authorities, the Court cannot grant Whitten Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Dkt. No. 63] solely because Wesner failed to file a response in opposition.

The undersigned therefore turns to the legal sufficiency of Wesner's 2dAC based on Whitten Defendants' arguments in support of dismissal under Rule 12(b)(6).

II. Attorney Immunity

As Judge Boyle explained when addressing the last round of motions to dismiss,

> Whitten Defendants assert attorney immunity bars Wesner's claims
> against them because "all of Whitten[] [Defendants'] actions are 'the
> kind of conduct' attorneys undertake while discharging their
> professional duties to a client." Doc. 40, Whitten Mot., ¶¶ 15–18 & n.4
> (quoting *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 67 (Tex.
> 2021)). Wesner responds, "An attorney is not immune from suit for
> participating in 'independently fraudulent activities' that fall outside
> the scope of the attorney's representation of a client." Doc. 50, Resp., 10
> (quoting *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*,
> 595 S.W.3d 651, 657 (Tex. 2020)). He argues, "[Wesner] has alleged that
> the Whitten Defendants engaged in fraudulent activities and dismissal
> of the claims against the Whitten Defendants at the motion to dismiss
> stage, without discovery, would be premature." *Id.*
>
> Attorneys and law firms in Texas are generally immune from
> third party liability for legal services provided in the representation of
> a client. *See, e.g.*, *Haynes & Boone*, 631 S.W.3d at 76, 81. In Texas,
> attorney immunity is an affirmative defense "intended to ensure loyal,
> faithful, and aggressive representation by attorneys employed as
> advocates." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex.
> 2015) (internal quotation omitted). Under Texas law, "attorney
> immunity is properly characterized as a true immunity from suit, not as
> a defense to liability." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341,
> 346 (5th Cir. 2016).
>
> Dismissal under Rule 12(b)(6) may be granted based on a
> successful affirmative defense if the defense appears on the face of the
> complaint. *See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase
> Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006); *Kelly v. Nichamoff*, 868
> F.3d 371, 375 (5th Cir. 2017) ("Although Texas courts occasionally grant
> attorney immunity at the motion to dismiss stage, in those cases, the
> scope of the attorney's representation – and thus entitlement to the
> immunity – was apparent on the face of the complaint."). "[A]n attorney
> seeking dismissal based on attorney immunity bears the burden of
> establishing entitlement to the defense." *Kelly*, 868 F.3d at 375 (citing
> *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App. – Houston
> [14th Dist.] 2014, pet. denied)).

-12-

The Supreme Court of Texas clarified what an attorney must show to meet this burden in two recent cases: *Haynes & Boone*, 631 S.W.3d 65 and *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40 (Tex. 2021). The court "summariz[ed] [its] jurisprudence" as follows. *See Haynes & Boone*, 631 S.W.3d at 78.

> [A]ttorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.

*Id.* This "immunity applies in all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client, including a business-transactional context." *Id.* at 67. The Court analyzes each prong in turn.

   1. <u>Legal Services</u>

The first prong addresses whether a "claim against [an] attorney is based on 'the kind of conduct' attorneys undertake while discharging their professional duties to a client." *Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022) (quoting *id.*). "[T]he conduct must involve 'the uniquely lawyerly capacity' and the attorney's skills as an attorney." *Id.* (quoting *Landry's*, 631 S.W.3d at 51-53). In other words, the attorney must be providing legal services.

The *Landry's* decision provides color. In *Landry's*, a non-client sued its opponent's attorneys for defamation, business disparagement, and other tortious conduct because the attorneys issued press releases repeating their client's allegations and published these press releases online and on social media. *Landry's*, 631 S.W.3d at 44-45. Although the attorneys were acting on their client's behalf in issuing and publishing these press releases, the Court held attorney immunity did not apply. *Id.* at 52–53. The court reasoned,

> Anyone – including press agents, spokespersons, or someone with no particular training or authority at all – can publicize a client's allegations to the media, and they commonly do so without the protection of immunity. While lawyers can also make such statements, attorney immunity does not apply to an activity simply because attorneys often engage in that activity.

*Id.* at 52.

-13-

Dkt. No. 54 at 7-9.

In ruling on the prior motion to dismiss the Amended Complaint, Judge Boyle

explained that

> Wesner only specifically alleges two actions taken by Whitten
> Defendants. First, Whitten met with Wesner to discuss the legal status
> of the HOA entity. *See* Doc. 38, Am. Compl., ¶ 3.95. Second, Whitten
> asked Wesner three times by email to pay his assessments. *Id*. ¶ 3.121.
>      The Court finds the meeting constituted legal services. Attorneys
> are uniquely equipped to represent a client in disputes about the legality
> of an entity or invoice. In discussing the legality of the assessments and
> HOA, Whitten doubtless used the "unique office, professional skill,
> training, and authority of an attorney." *See Haynes & Boone*, 631 S.W.3d
> at 78.
>      It is not clear from the Amended Complaint that Whitten's emails
> requesting Wesner pay his assessments constituted legal services. Many
> attorneys and law firms engage in collection efforts in the course of their
> representation of a client, as Whitten likely did in this case. However,
> requests to pay assessments do not require "the unique office,
> professional skill, training, and authority of an attorney." *See id*. This is
> apparent from the allegations in this case. Each Defendant has, in some
> form or fashion, asked Wesner to pay his assessments, and based on the
> Amended Complaint, it appears none of the other Defendants are
> lawyers. Much like the act of "municiz[ing] a client's allegations to
> the media," anyone can request payment of a fee. *See Landry's*, 631 S.W.3d
> at 52. The Court therefore finds it is not apparent from the face of the
> complaint that Whitten is entitled to immunity as to his emails
> requesting payment. Thus, he has not carried his burden as to these
> emails. *See Kelly*, 868 F.3d at 375-76.
> ….
>      The Court now turns to whether Whitten's actions in the meeting
> are within the scope of the representation. The only allegation
> concerning the scope of Whitten's representation is that Whitten was
> hired as "attorney in respect to [Wesner's] document requests and the
> documents that [Wesner] requested." *See* Doc. 38, Am. Compl., ¶¶ 3.50,
> 3.84. As Whitten recognized, these document requests chiefly related to
> "the legal status of the HOA entity." *See id*. ¶ 3.94. The Court finds
> Whitten's actions in the meeting fall within the scope of his
> representation of Estates of Windsor Ridge. *See id*. ¶¶ 3.50, 3.84.

Because Whitten's requests for payment do not constitute legal services, the Court does not address whether they fall within the scope of the representation. *See Haynes & Boone*, 631 S.W.3d at 78 (holding actions must include the "provision of 'legal' services" *and* "fulfill the attorney's duties in representing the client").

....

As explained above, the Court finds that some but not all of Whitten's alleged conduct satisfies the elements of attorney immunity. The Fifth Circuit has explained, "[A]ttorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." *Troice*, 816 F.3d at 346. But attorney immunity is not limited to situations where it would bar all claims against a defendant. *See, e.g., Clark v. Bank of Am., N.A.*, 2013 WL 12126785, at *2 (W.D. Tex. July 17, 2013), *report and recommendation adopted*, 2013 WL 12126351 (W.D. Tex. Oct. 1, 2013) ("[I]t may be that, unlike the FDCPA claim, particular other claims of Plaintiffs are subject to BDFTE's attorney-immunity defense."); *accord Loupe v. O'Bannon*, 824 F.3d 534, 539-41 (5th Cir. 2016) (finding prosecutorial immunity, an immunity-from-suit doctrine with similar purposes to attorney immunity, barred some but not all claims against a defendant).

Here, Wesner's claims against Whitten Defendants are barred by attorney immunity insofar as the "claims are based on [Whitten's actions in his meeting with Wesner]." *See Haynes & Boone*, 631 S.W.3d at 81. Insofar as the claims are based on Whitten's requests that Wesner pay his assessments, they are not barred by attorney immunity.

Dkt. No. 54 at 9-11.

Whitten Defendants now argue, as to the 2dAC, that

(17) The HOA engaged Whitten to represent the HOA adversarial to Wesner's allegation. Doc. 57 ¶¶ 3.71, .124. Wesner's Second Amended Complaint alleges that Whitten undertook the following acts while representing the HOA:

- o    "attended meetings of Windsor Ridge Homeowners Association and was shown as the attorneys and general counsel on the minutes," Doc. 57 ¶ 3.123;
- o    engaged in email and telephone communications with Wesner, Doc. 57 ¶¶ 3.89, .92, .93, .96, .101, .103, .115, .120;
- o    met with Wesner at Whitten's office to discuss Wesner's contentions, Doc. 57 ¶ 3.102; and

-15-

o    represented the HOA at an April 26, 2021 Zoom hearing in which Wesner was adverse to the HOA, Doc. 57 ¶ 3.115.

(18) As this Court noted in its Memorandum Opinion and Order, meeting with an opposing party in an attorney's office involves the provision of legal services and is within the scope of an attorney's representation because "[a]ttorneys are uniquely equipped to represent a client in disputes about the legality of an entity or invoice. In discussing the legality of the assessments and HOA, Whitten doubtless used the 'unique office, professional skill, training, and authority of an attorney.'" Doc. 54 p. 10 (quoting *Haynes & Boone*, 631 S.W.3d at 78). Likewise, attending HOA meetings as "the attorneys and general counsel on the minutes," Doc. 57 ¶ 3.123, and representing the HOA at the April 27, 2021 Zoom hearing, Doc. 57 ¶ 3.115, involved the provision of legal services using Whitten's "'unique office, professional skill, training, and authority of an attorney.'" *Haynes & Boone*, 631 S.W.3d at 78.

(19) Regarding emails and other communications between Wesner and Whitten, including any emails asking Wesner to "[p]lease pay your assessments," Doc. 57 ¶ 3.120, these too involved the provision of 'legal' services using Whitten's "unique office, professional skill, training, and authority of an attorney." *Haynes & Boone*, 631 S.W.3d at 78. As set forth in the Second Amended Complaint, Wesner aggressively pursues a unique legal theory threatening the HOA's very existence. An attorney's communication with an adverse party is a key function of legal representation and is exactly the "kind of" conduct contemplated by the attorney-immunity doctrine. *Cantey Hanger, LLP*, 467 S.W.3d at 485.

(20) Attorney immunity bars claims by nonclients for "acts taken ***and communications made*** to facilitate the rendition of legal services." *Alpert*, 178 S.W.3d at 408 (emphasis added). As shown in the Second Amended Complaint, Wesner communicates frequently via email. See e.g., Doc. 57 ¶¶ 3.45, .66, .74, .76, .78, .80, .88, .89, .92, .93, .97, .105 (noting instances in which Wesner sent email correspondence).

(21) Engaging in continued communication via email – particularly with an adverse party that sends voluminous emails – is exactly the "the kind of conduct" attorneys undertake while discharging their professional duties to a client, *Haynes & Boone, LLP*, 631 S.W.3d at 67, using "the office, professional training, skill, and authority of an attorney." *Cantey Hanger, LLP*, 467 S.W.3d at 481-82.

(22) Whitten is thus immune for all actions as alleged in Wesner's Second Amended Complaint. The Court should therefore dismiss Wesner's claims with prejudice.

Dkt. No. 63 at 13-14.

A side-by-side comparison of the Amended Complaint's allegations to which Whitten Defendants point with the 2dAC's corresponding allegations will be helpful in considering Whitten Defendants' current motion to dismiss in light of the Court's ruling on the allegations on Whitten Defendants' prior motion to dismiss:

| Amended Complaint | 2dAC |
|---|---|
| 3.50. Lopez advised Trustee that Francis had terminated Riddle & Williams and would engage a new attorney in respect to Trustee's document requests and the documents that Trustee requested. The unincorporated association at a board meeting had engaged Whitten who did not provide the documents that Trustee requested and purportedly had been in Grant Neidenfeuhr's possession. | 3.71. Lopez advised the Trustee that Francis terminated Riddle & Williams and would engage a new attorney in respect to the Trustee's document requests and the documents that the Trustee requested. The unincorporated association, Windsor Ridge Homeowners' Association, at a board meeting had engaged Whitten, who did not provide the documents that the Trustee requested and purportedly had been in Grant Neidenfeuhr's possession. Although requested, Whitten and the Whitten firm have not produced any documents showing they were engaged at an Estate's board meeting. Without authorization, and in furtherance of the fraudulent scheme, Francis signed an engagement letter for Estates with Whitten contrary to the board resolutions of Windsor Ridge Homeowners' Association engaging Whitten. |
| 3.82. The December 30, 2018 email from Trustee to Whitten requested the governing document received by Francis, Hildinger and Denney. Whitten refused the request. | 3.89. The December 30, 2018 email from the Trustee to Whitten requested the governing document received by Francis, Hildinger, and Denney. Whitten refused the request. |
| 3.84. Whitten was engaged at the November 27, 2018 meeting to | 3.91. Whitten was engaged at the November 27, 2018 meeting to |

| Amended Complaint | 2dAC |
|---|---|
| represent Windsor Ridge Homeowners' Association and paid $5,000 at the November 27, 2018 meeting for Windsor Ridge Homeowners' Association. At the November 27, 2018 meeting Francis presided as president. Thereafter, Francis, Whitten met with Francis surreptitiously and entered an engagement letter with Estates. Francis, Whitten and the Whitten Firm, jointly and severally, wrongfully have represented Estates to the detriment and damage of Trustee. Trustee advised Whitten of the conflict and, nevertheless, Whitten and the Whitten Firm continued the conflict of interest to the detriment and damage of Trustee. | represent Windsor Ridge Homeowners' Association and paid $5,000 at the November 27, 2018 meeting for Windsor Ridge Homeowners' Association. At the November 27, 2018 meeting, Francis presided as president of Windsor Ridge Homeowners' Association. Thereafter, in furtherance of the fraudulent scheme, Whitten met with Francis surreptitiously and entered an engagement letter with Estates. Francis, Whitten, and the Whitten Firm, jointly and severally, and in furtherance of the fraudulent scheme, have wrongfully represented Estates to the detriment and damage of the Trustee. The Trustee advised Whitten of the conflict and, nevertheless, Whitten and the Whitten Firm continued the conflict of interest to the detriment and damage of the Trustee. |
| 3.85. The January 1, 2019 7:25 PM email from Trustee to Whitten and Francis requested answers to threshold questions needed to prepare for the upcoming meeting with Whitten in Whitten Firm's office. <u>Whitten refused to provide the answers requested by Trustee.</u> | 3.92. The January 1, 2019 7:25 PM email from the Trustee to Whitten and Francis requested answers to threshold questions needed to prepare for the upcoming meeting with Whitten in Whitten Firm's office. <u>Whitten refused to provide the answers requested by the Trustee.</u> |
| 3.86. The January 2, 2019 10:08 AM email from Trustee to Whitten had attached some of the problems including, without limitation:<br>    The November 1, 1999 letter from the Secretary of State of Texas returning the unfiled Articles for Windsor Ridge Homeowners' Association, Inc. | 3.93. The January 2, 2019 10:08 AM email from the Trustee to Whitten had attached some of the problems including, without limitation:<br>    The November 1, 1999 letter from the Secretary of State of Texas returning the unfiled Articles for Windsor Ridge Homeowners' Association, Inc. |

| Amended Complaint | 2dAC |
|---|---|
| The Release of Notice of Assessment Lien dated March 16, 2018 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated March 27, 2014 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated June 24, 2013 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated January 29, 2002 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated August 1, 2001 by Windsor Ridge Homeowners' Association. The Amendment to Management Agreement dated January 14, 2013 signed by Wyatt Francis as the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. The Amendment to Management Agreement dated September 25, 2009 signed by Wyatt Francis as the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. The Amendment to Management Agreement dated May 21, 2004 with an unintelligible signature as the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. The Management Agreement purportedly with Windsor Ridge Homeowners' Association (a | The Release of Notice of Assessment Lien dated March 16, 2018 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated March 27, 2014 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated June 24, 2013 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated January 29, 2002 by Windsor Ridge Homeowners' Association. The Notice of Assessment Lien dated August 1, 2001 by Windsor Ridge Homeowners' Association. The Amendment to Management Agreement dated January 14, 2013 signed by Wyatt Francis as the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. The Amendment to Management Agreement dated September 25, 2009 signed by Wyatt Francis as the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. The Amendment to Management Agreement dated May 21, 2004 with an unintelligible signature as the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. The Management Agreement purportedly with Windsor Ridge Homeowners' Association (a |

| Amended Complaint | 2dAC |
|---|---|
| community association of 141 Units) signed in October 1999 by the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. | community association of 141 Units) signed in October 1999 by the purported duly authorized agent for owners/members of records for the Windsor Ridge Homeowners' Association. |
| 3.95. Trustee and Whitten in or about early February 2019 met at Whitten Firm's office. Whitten materially misrepresented, among other things, to Trustee upon which the Trustee relied that Whitten would contact Windsor Ridge Homeowners' Association, Inc. in Irving and request permission to use the name for Windsor Ridge Homeowners' Association, Inc. in Denton. Whitten would, thereafter, prepare the required documents for Windsor Ridge Homeowners' Association, Inc. in Denton. | 3.95. Trustee and Whitten in or about early February 2019 met at Whitten Firm's office. Whitten materially misrepresented, among other things, to Trustee upon which the Trustee relied that Whitten would contact Windsor Ridge Homeowners' Association, Inc. in Irving and request permission to use the name for Windsor Ridge Homeowners' Association, Inc. in Denton. Whitten would, thereafter, prepare the required documents for Windsor Ridge Homeowners' Association, Inc. in Denton. |
| 3.89. The January 9, 2019 3:51 PM email from Whitten to Trustee materially misrepresented to Trustee as follows:<br><br>    I will check. I did receive an email from Connie the other day that she is still gathering documents you requested, though I don't recall the specifics.<br><br>Trustee relied on the representation. | 3.96. The January 9, 2019 3:51 PM email from Whitten to the Trustee materially misrepresented to the Trustee as follows:<br><br>    I will check. I did receive an email from Connie the other day that she is still gathering documents you requested, though I don't recall the specifics.<br><br>The Trustee relied on the material misrepresentation. |
| 3.94. The January 28, 2019 1:17 PM email from Whitten to Trustee, Francis and Denney states:<br><br>    Thank you, Tom. We of course want to find an amicable solution. I do believe that the chief concern is the legal status of the HOA entity. I therefore think it is prudent to address that issue before all others. Once | 3.101. The January 28, 2019 1:17 PM email from Whitten to the Trustee, Francis, and Denney states:<br><br>    Thank you, Tom. We of course want to find an amicable solution. I do believe that the chief concern is the legal status of the HOA entity. I therefore think it is prudent to address that issue before all others. Once |

| Amended Complaint | 2dAC |
|---|---|
| we can come to an accord on that issue we will be able to address the rest as appropriate. I look forward to sitting down with you to discuss our respective positions. | we can come to an accord on that issue we will be able to address the rest as appropriate. I look forward to sitting down with you to discuss our respective positions.<br><br>Whitten's statements in this email constituted material misrepresentations because Whitten had no intention of finding an amicable solution and/or coming to an accord with the Trustee. |
| 3.95. Trustee and Whitten in or about early February 2019 met at Whitten Firm's office. Whitten materially misrepresented, among other things, to Trustee upon which the Trustee relied that Whitten would contact Windsor Ridge Homeowners' Association, Inc. in Irving and request permission to use the name for Windsor Ridge Homeowners' Association, Inc. in Denton. Whitten would, thereafter, prepare the required documents for Windsor Ridge Homeowners' Association, Inc. in Denton. | 3.102. The Trustee and Whitten, on or about early February 2019, met at Whitten Firm's office. Whitten materially misrepresented, among other things, to the Trustee upon which the Trustee relied that Whitten would contact Windsor Ridge Homeowners' Association, Inc. in Irving and request permission to use the name for Windsor Ridge Homeowners' Association, Inc. in Denton. Whitten would, thereafter, prepare the required documents for Windsor Ridge Homeowners' Association, Inc. in Denton. |
| 3.97. Whitten's email dated April 9, 2019 11:07 AM to Trustee, Michael Whitten and assistant. Materially misrepresented that Whitten is "making good progress." | 3.103. Whitten's email dated April 9, 2019 11:07 AM to the Trustee, Michael Whitten and assistant, materially misrepresented that Whitten is "making good progress." |
| 3.110. Trustee received on his doorstep a federal express delivery on April 21, 2021 with "Estates of Windsor Ridge Homeowners' Association" notice of an April 26, 2021 Zoom hearing at 6:30 pm. Also, Whitten forwarded the email from Blake Bombere, the purported community association manager, of the notice to Trustee for the "EOWR Hearing Request" for the April 26, 2021 | 3.115. The Trustee received on his doorstep a federal express delivery on April 21, 2021 with "Estates of Windsor Ridge Homeowners' Association" notice of an April 26, 2021 Zoom hearing at 6:30 pm. Also, Whitten forwarded the email from Blake Bombere, the purported community association manager, of the notice to the Trustee for the "EOWR Hearing Request" for |

| Amended Complaint | 2dAC |
|---|---|
| Zoom hearing at 6:30 pm on the unauthorized collection letter dated February 18, 2021 and Trustee's reply. "EOWR" may stand for Estates of Windsor Ridge.<br><br>3.111. The April 26, 2021 Zoom hearing was commenced as noticed from Dallas, Texas by Blake Bombere of PMG. In attendance for Estates were Blake Bombere, Whitten, Hildinger, Francis. Denney, and Martin. Hildinger conducted the Zoom hearing and refused to comply with Tex. Prop. Code § 209.007. Hildinger misrepresented that the hearing was on a letter from Estates even though no such letter was received by Trustee. Hildinger insisted that Trustee state whatever he wished to state within a short period of time. Trustee presented his objections and attempted the required discussion. Hildinger refused and recessed the hearing for April 26, 2021 Zoom hearing executive session with Blake Bombere, Whitten, Francis, Denney, and Martin. After the executive session, Hildinger without discussion immediately made Estate's demand on Trustee for the alleged debt without interest.<br><br>3.112. Defendants and Blake Bombere, jointly and severally, ignored Trustee's reply dated March 18, 2021. Tex. Prop. Code § 209.007 required Defendants at the hearing to "discuss and **verify facts** and resolve the matter in issue" as to whether the alleged $533.49 duplicate debts in the unauthorized collection letter's attachments were legally, currently due and owing as required. Defendants violated Tex. | the April 26, 2021 Zoom hearing at 6:30 pm on the unauthorized collection letter dated February 18, 2021 and the Trustee's reply. "EOWR" may stand for Estates of Windsor Ridge. The April 26, 2021 Zoom hearing was commenced as noticed from Dallas, Texas by Blake Bombere of PMG. In attendance for Estates were Blake Bombere, Whitten, Hildinger, Francis. Denney, and Martin. Hildinger conducted the Zoom hearing and refused to comply with Tex. Prop. Code § 209.007. Hildinger misrepresented that the hearing was on a letter from Estates even though no such letter was received by the Trustee. Hildinger insisted that the Trustee state whatever he wished to state within a short period of time. The Trustee presented his objections and attempted the required discussion. In furtherance of the conspiracy, Hildinger refused and recessed the hearing for April 26, 2021 Zoom hearing executive session with Blake Bombere, Whitten, Francis, Denney, and Martin. After the executive session, Hildinger, without discussion, immediately made Estate's demand on the Trustee for the alleged debt without interest. Defendants and Blake Bombere, jointly and severally, ignored the Trustee's reply dated March 18, 2021. Tex. Prop. Code § 209.007 required Defendants at the hearing to "discuss and **verify facts** and resolve the matter in issue" as to whether the alleged $533.49 duplicate debts in the unauthorized collection letter's attachments were legally, currently due and owing as required. Defendants violated Tex. Prop. Code § 209.007. |

| Amended Complaint | 2dAC |
|---|---|
| Prop. Code § 209.007. Defendants did not "discuss and **verify** facts and resolve the matter in issue:"<br><br>    **"Verify"** means to make certain, to substantiate, or confirm by formal oath, affirmation or Affidavit. See, legal-dictionary.thefreedictionary.com. **"Facts"** are an event, occurrence, or state of affairs know to have happened; to be distinguished from opinion or law, See, legal-dictionary.thefreedictionary.com. | Defendants did not "discuss and **verify facts** and resolve the matter in issue:"<br><br>    **"Verify"** means to make certain, to substantiate, or confirm by formal oath, affirmation or Affidavit. See, legal-dictionary.thefreedictionary.com. "**Facts**" are an event, occurrence, or state of affairs know to have happened; to be distinguished from opinion or law, See, legal-dictionary.thefreedictionary.com. |
| 3.121. Whitten by three different emails to Trustee has demanded and materially misrepresented to Trustee, "Please pay your assessments." Whitten made the unauthorized demands even though Trustee had explained repeatedly to Whitten why the demands were wrong based on the purported Declaration §§ 4.1, 4.3, 4.5(d), 4.5(f), 4.6 and 4.7. | 3.120. Whitten, by three different emails to Trustee, has demanded and materially misrepresented to the Trustee, "Please pay your assessments." Whitten made the unauthorized demands even though the Trustee had explained repeatedly to Whitten why the demands were wrong based on the Declaration §§ 4.1, 4.3, 4.5(d), 4.5(f), 4.6 and 4.7. |
|  | 3.123. The Whitten Firm attended meetings of Windsor Ridge Homeowners Association and was shown as the attorneys and general counsel on the minutes. |
| 2.01. This Court has federal question jurisdiction under the Federal Debt Practices Collection Act Chapter 392 ("FDCPA"). The Debt Collectors Southall, Associa, PMG, CSSC and Whitten wrongfully attempted to collect unauthorized HOA assessments and charges from Trustee. Whitten was engaged at the "**Windsor Ridge Homeowners' Association** Minutes for Regular Board Meeting November 27, 2018" to represent the | 3.124. Southall, PMG, CSSC, and Whitten wrongfully conspired with Associa to collect unauthorized HOA assessments and charges from the Trustee. Whitten was engaged at the "**Windsor Ridge Homeowners' Association** Minutes for Regular Board Meeting November 27, 2018" to represent the unincorporated Windsor Ridge Homeowners' Association and paid $5,000 at the November 27, 2018 meeting for Windsor Ridge |

| Amended Complaint | 2dAC |
|---|---|
| unincorporated Windsor Ridge Homeowners' Association and paid $5,000 at the November 27, 2018 meeting for Windsor Ridge Homeowners' Association. Whitten accepted a $5,000 retainer at the meeting. Then, Whitten in conflict with the unincorporated Windsor Ridge Homeowners' Association represented Estates to Trustee's injury. Plaintiff is a lot owner in the Windsor Ridge subdivision and as such is an automatic member of Windsor Ridge Homeowners[TW1]' Association since January 8, 2018. Whitten and the Whitten firm represented Trustee as a client because the Trustee is a member of the unincorporated association. Whitten and the Whitten firm were engaged to represent at its purported Board meeting of the unincorporated association. There is no immunity. | Homeowners' Association. Whitten accepted a $5,000 retainer at the meeting. Whitten and the Whitten Firm were general counsel for Windsor Ridge Homeowners' Association. Then, Whitten in conflict with the unincorporated Windsor Ridge Homeowners' Association and its respective members, represented Estates to the Trustee's injury. The Trustee is a lot owner in the Windsor Ridge subdivision and as such is an automatic member of Windsor Ridge Homeowners' Association since January 8, 2018. <br><br>3.125. Whitten and the Whitten Firm represented the Trustee as a client because the Trustee is a member of the unincorporated association. There is no immunity. |

Wesner again, in the 2dAC, only specifically alleges two actions taken by Whitten Defendants: Whitten met with Wesner to discuss the legal status of the HOA entity, and Whitten asked Wesner three times by email to pay his assessments.

And, as Judge Boyle has already ruled, "[i]nsofar as the claims are based on Whitten's requests that Wesner pay his assessments, they are not barred by attorney immunity" because "it is not apparent from the face of the complaint that Whitten is entitled to immunity as to his emails requesting payment" and, so "he has not carried his burden as to these emails." Dkt. No. 54 at 10, 11.

As the comparison above demonstrates, Wesner's allegations in the 2dAC regarding those emails did not change. And Whitten Defendants' arguments – that emails can be communications made to facilitate the rendition of legal services and that engaging in continued communication via email can be the kind of conduct that attorneys undertake while discharging their professional duties to a client, using the office, professional training, skill, and authority of an attorney – does not change the governing law or the Court's prior analysis and conclusion.

The Court should conclude that, insofar as the 2dAC's claims are based on Whitten's requests that Wesner pay his assessments, they are not barred by attorney immunity.

But, by the same token, Wesner's allegations in the 2dAC regarding Whitten's meeting with Wesner to discuss the legal status of the HOA entity also did not change. And neither should the Court's analysis and conclusion

The Court should grant Whitten Defendants' motion to dismiss the 2dAC to the extent that Wesner's claims against Whitten Defendants are barred by attorney immunity insofar as the claims are based on Whitten's actions in his meeting with Wesner.

III.    <u>Declaratory Judgment</u>

As to Wesner's declaratory judgment claims, in ruling on the prior motion to dismiss the Amended Complaint, Judge Boyle explained that

> Wesner seeks a declaratory judgment declaring void all assessments, collection attempts, and managing documents of Estates of Windsor

Ridge. *See* Doc. 38, Am. Compl., ¶ 4.10. Whitten Defendants argue they have no connection to this request. Doc. 40, Whitten Mot., ¶ 54. ….

"The Declaratory Judgment Act … has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). This discretion is not absolute; instead, courts are guided by a non-exclusive list of seven relevant factors.

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and, [7]] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994) (internal quotation and citation omitted). Unless the court addresses and balances these factors, it abuses its discretion. *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).

The Court finds these factors heavily favor exercising jurisdiction. First, there is no pending state-court action where these claims may be fully litigated. Second, Wesner likely filed suit in anticipation of a lawsuit from at least some Defendants. Third, there is no indication of forum shopping. Fourth, there are no inequities in allowing Wesner to determine the legality of his assessments or the HOA first. Fifth, there is no indication that this forum is inconvenient for the parties or witnesses. Sixth, because the other claims arising from this dispute are being litigated in this Court, retaining jurisdiction would serve the purposes of judicial economy. And seventh, the Court is not being asked to construe a state judicial decree. In sum, the factors heavily support exercising jurisdiction over Wesner's declaratory judgment claims.

Whitten Defendants argue the declaratory judgment claim should be dismissed as to them because they "ha[ve] no connection to the declaratory judgment action." Doc. 40, Whitten Mot., 27. Although most of the relief sought would not affect Whitten Defendants, Wesner asks

the Court to declare void the "collection letters/emails," some of which were sent by Whitten. Doc. 38, Am. Compl., ¶ 4.10. Thus, based on the facts alleged, the Court cannot conclude that Whitten Defendants have "no connection" to the action.

Dkt. No. 54 at 30-31.

Whitten Defendants now argue, as to the 2dAC, that Wesner's "declaratory judgment claims fail both because of Whitten's underlying attorney-immunity and because Whitten's past actions do not give rise to a present case or controversy between Wesner and Whitten":

> (27) Wesner seeks a series of declarations regarding his rights in relation to the community, the CCRs, and the HOA. Doc. 57 ¶¶ 4.01.– 13; 28 U.S.C. § 2201.
>
> (28) Specifically as it relates to Whitten, Wesner seeks declarations that (a) the hearing on April 26, 2021, in which Whitten represented the HOA against Wesner, is "void;" (b) any "emails" that Whitten sent to Wesner are "void;" and (c) various documents Whitten drafted for the HOA are declared "void." Each of these claims relate to matters in which Whitten engaged in the "the kind of conduct" attorneys undertake while discharging their professional duties to a client, *Haynes & Boone*, LLP, 631 S.W.3d at 67, using "the office, professional training, skill, and authority of an attorney." *Cantey Hanger, LLP*, 467 S.W.3d at 481-82.
>
> (29) The Declaratory Judgment Act does not create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984). It is merely a means of adjudicating a claim arising under other substantive law. *Collin Cty. v. Homeowner's Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) (quotation omitted). Thus, Whitten's immunity to all Wesner's underlying claims also applies to the declaratory judgment claims. Additionally, Whitten's complete disconnection from any ongoing enforcement requires the Court to dismiss the claims.
>
> (30) Wesner has not alleged, nor can he, that Whitten is a party to the CCRs; that Whitten is a party to any other instrument burdening his property; that Whitten has continued participation in the collection of any assessments; or that Whitten is in any way affected by what happens in the Windsor Ridge community. Indeed, as Wesner previously

noted in the First Amended Complaint, Whitten no longer represents the HOA or any other party. *See* Doc. 38 ¶ 3.104. Wesner has affirmatively pleaded that Whitten's involvement was solely in the past, which is insufficient to state a claim and provide standing in a declaratory judgment claim.

(31) The Fifth Circuit in *Bauer v. Texas* considered a suit by an individual against a probate court judge to declare unconstitutional a provision of the Texas Estates Code and enjoin future enforcement of the statute. 341 F.3d 352 (5th Cir. 2003). The probate court judge had issued prior rulings against Bauer in several guardianship proceedings, but no case was pending at the time Bauer filed suit. *Id.* at 355, 58. The *Bauer* court noted that a plaintiff can meet standing requirements when a suit is brought under Declaratory Judgment by establishing actual present harm or significant possibility of future harm even though injury-in-fact has not yet been completed. *Id.* at 357-58 (citing *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) and *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)). This means that an actual controversy must exist at all stages of review, not merely at the time the complaint is filed. *Id.* at 358 (citing *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, 92 S. Ct. 577, 30 L. Ed. 2d 560 (1972)). The "actual controversy" required under 28 USCS § 2201(a) is identical to meaning of "case or controversy" for purposes of U.S. Const. art. III. *Id.* (citing *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997)). Indeed, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)).

(32) Dismissing Whitten from the declaratory claims would not prejudice Wesner's rights in the event he prevails. As set forth in the Second Amended Complaint, Whitten at all times acted as the HOA's attorney in a representative capacity and did not have any independent grounds for enforcing the CCRs. Any past actions Whitten took on the HOA's behalf would still be subject to the Court's authority even without Whitten's presence in the case. Consider, Wesner seeks to declare void the CCRs. Doc. 57 ¶ 4.13(b). Yet does the Declaratory Judgment Act require the Court to reach back over 20 years to require as a necessary party the law firm that drafted the CCRs? Of course not. "The case or controversy requirement of Article III of the Constitution requires a plaintiff to show that he and the defendants have adverse legal interests." *Id.* at 359 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937)). Wesner simply cannot show an

ongoing adverse interest because Whitten ceased being involved a year before Wesner ever filed suit.

(33) Because he is immune from Wesner's other claims, because he is not a member of the community or otherwise bound by the CCRs, and because he no longer represents any party involved and thus has zero connection to this matter, issuing any declaration against Whitten would be a futile effort. Therefore, the Court should dismiss Wesner's claims against Whitten for declaratory relief.

Dkt. No. 63 at 16-19 (footnote omitted).

A side-by-side comparison of the Amended Complaint's allegations with the 2dAC's corresponding allegations will again be helpful in considering Whitten Defendants' current motion to dismiss in light of the Court's ruling on the allegations on Whitten Defendants' prior motion to dismiss.

| Amended Complaint | 2dAC |
|---|---|
| | A. No Valid Mandatory Homeowners' Association Exists Because RH of Texas Did Not Own the Windsor Ridge Subdivision When the Declaration was Signed and Recorded.<br><br>4.02. A "Homeowners' Association" is an organization created by the recording of the Declaration with restrictive covenants that "run with the land." The Board and "Homeowners' Association" have no inherent power or discretion, and the authority of Board and "Homeowners' Association" are **limited** to those powers expressly in their governing documents and Texas law, including the power to make assessments in accordance with the Declaration. |

| Amended Complaint | 2dAC |
|---|---|
| | B. <u>Even if the Declaration Was Valid, No Mandatory Homeowners' Association Exists that is Authorized to Collect Fees Against Homeowners in the Windsor Ridge Subdivision.</u><br>1. <u>Windsor Ridge Homeowners' Association Was Never Incorporated.</u> |
| 3.19. No Certificate of Incorporation was issued by the Secretary of State of Texas for Windsor Ridge Homeowners' Association, Inc. as the prerequisite for the void Written Consent to adopt the void Bylaws for Windsor Ridge Homeowners' Association, Inc., which were both signed prematurely. | 4.03. Section 4.1 of the Declaration requires that the Windsor Ridge Homeowners' Association "shall be incorporated as a non-profit corporation." No Certificate of Incorporation was issued by the Secretary of State of Texas for "Windsor Ridge Homeowners' Association, Inc." A valid Certificate of Incorporation was a prerequisite for the void Written Consent to adopt the void Bylaws for Windsor Ridge Homeowners' Association, Inc. The void Written Consent and void Bylaws were both signed prematurely. |
| 3.21. Further, the purported Declaration § 4.1 condition [] has not occurred or been performed because the existing Windsor Ridge Homeowners' Association has not been incorporated. The purported Declaration § 4.1 is as follows:<br>    Section 4.1 Creation. The Windsor Ridge Homeowners' Association (the "Homeowners' Association") shall be incorporated as a non-profit corporation. The owners shall constitute members of the Homeowners' Association. Each owner of a lot, including | 4.04. Thus, to the extent an unincorporated Windsor Ridge Homeowners' Association existed prior to the filing of the Declaration, the Declaration expressly requires that it be incorporated as a non-profit organization. The Texas Secretary of State refused to incorporate the Windsor Ridge Homeowners' Association. As such, any previously existing unincorporated Windsor Ridge Homeowners' Association was not authorized to assess fess as set forth in the Declaration. |

| Amended Complaint | 2dAC |
|---|---|
| Declarant, shall automatically be a member of the Homeowners' Association. Homeowners' Association membership shall be appurtenant to ownership of a lot. Ownership of a lot is the sole criterion for membership in the Homeowners' Association. | |
| | **2. Estates Was Never Incorporated and Formed in Compliance with the Declaration.** |
| | 4.05. On January 7, 2000, Articles of Incorporation for "Estates of Windsor Ridge Homeowners Association, Inc." were filed with the Texas Secretary of State. However, the Articles of Incorporation failed to state that they were for the purpose of incorporating a homeowners' association pursuant to the Declaration. Further, Estates failed to properly adopt its own Bylaws, set up a Board of Directors, and/or effect a Written Consent in Lieu of Organizational Meeting. As such, Estates fails to meet the requirements of the Declaration and is not a valid homeowners' association pursuant to the Declaration. |
| 3.22. Windsor Ridge Association has not had and does not have a duly elected Board that has taken formal action to manage the Windsor Ridge subdivision and under the purported Declaration § 4.5(f) to establish and collect annual assessments to defray expenses attributable to Homeowners Association's duties to be levied against each owner that is correctly calculated | 4.06. Windsor Ridge Homeowners' Association has not had and does not have a duly elected Board that has taken formal action to manage the Windsor Ridge subdivision pursuant to the Declaration § 4.5(f) including, without limitation, to establish and collect annual assessments to defray expenses attributable to Homeowners |

| Amended Complaint | 2dAC |
|---|---|
| under the purported Declaration § 4.6 pursuant to and limited by the purported Declaration § 4.7. | Association's duties, which was to be levied against each owner and correctly calculated under the Declaration § 4.6 pursuant to and limited by the Declaration §§ 4.5(f) and 4.7. |
| 3.35. The provisions of the purported Declaration, if valid, would control to the extent of any conflicts between its provision(s) with any other document. The purported Declaration § 4.3 requires management a duly elected "Board" … "**subject to this Declaration**." (Bold emphasis added). | 4.07. The provisions of the Declaration, if valid, would control to the extent of any conflicts between its provision(s) with any other document. The Declaration § 4.3 requires management a duly elected "Board" … "**subject to this Declaration**." (Bold emphasis added). |
| 3.23. Any purported Board of Directors of Estates is not the purported Declaration § 4.3 Board of Windsor Ridge Homeowners' Association. Estates is not named in the purported Declaration. The purported Declaration was recorded before Estates was incorporated. Estates has no authority in respect to Windsor Ridge subdivision or Trustee. All owners are not members of Estates. Trustee is not a member of Estates. Estates is on notice of Trustee's repeated objections to it and its unauthorized acts.<br>3 | 4.08. Any purported Board of Directors of Estates is not the Declaration § 4.3 Board of Windsor Ridge Homeowners' Association. Estates is not named in the Declaration. The Declaration was recorded before Estates was incorporated. Estates has no authority in respect to Windsor Ridge subdivision or the Trustee. All owners are not members of Estates. The Trustee is not a member of Estates. Estates is on notice of the Trustee's repeated objections to it and its unauthorized acts. |
| | C. Even if the Declaration was Valid and Estates is a Valid Homeowners' Association Governing the Trustee's Property, the Fees Assessed Against the Trustee's Property Are Invalid.<br>1. The Declaration Does Not Permit Delegation of the Homeowners' Associations' Duties to Third-Parties. |
| .25. The purported Declaration § 4.5(d) authorizes the delegation of powers to | |

| Amended Complaint | 2dAC |
|---|---|
| only a committee, officer or employee of Windsor Ridge Homeowners' Association. Defendants, jointly and severally, are not a committee, officer or employee of Windsor Ridge Homeowners' Association. Therefore, the power of the Board of Windsor Ridge Homeowners' Association cannot be delegated to any Defendant and any action taken by any Defendant is unauthorized including, without limitation, the unauthorized Management Agreement, the unauthorized Amendments, and Defendants, joint and several, unauthorized acts that effect Plaintiff's affairs related to the Windsor Ridge subdivision. | 4.09. The Declaration § 4.5(d) authorizes the delegation of powers to only a committee, officer, or employee of Windsor Ridge Homeowners' Association. Defendants, jointly and severally, are not a committee, officer, or employee of Windsor Ridge Homeowners' Association. Therefore, the power of the Board of Windsor Ridge Homeowners' Association cannot be delegated to any Defendant and any action taken by any Defendant is unauthorized, including, without limitation, the unauthorized Management Agreement, the unauthorized Amendments, and Defendants, joint and several, unauthorized acts that effect the Trustee's affairs related to the Windsor Ridge subdivision.<br><br>　　2. The Declaration Does Not Permit Annual Assessments That Exceed 110% of the Prior Year's Fee.<br><br>4.10. The Declaration prohibits a homeowners' association from collecting or charging annual assessments in amounts greater than 110% of the previous annual assessment.<br><br>4.11. Defendants have invoiced and collected annual assessments from the Trustee and other lot owners in the subdivision in amounts greater than 110% of the prior year's annual assessment.<br><br>4.12. Defendants continue to invoice the Trustee and other lot owners for |

| Amended Complaint | 2dAC |
|---|---|
| | assessments in violation of the Declaration as set forth above. |
| 4.10 Declaratory Judgment Action. The paragraphs above are incorporated herein by reference including, without limitation, under the FDCPA. Pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Plaintiff seeks declaratory relief as follows: | D. Declarations Sought.<br><br>4.13. Pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the Trustee seeks declaratory relief as follows: |
| (1) Enter an order declaring that Trustee is held harmless from any and all claims made against the Trustee by the Windsor Ridge subdivision, Windsor Ride Homeowners' Association, Windsor Ridge Homeowners' Association, Inc. and Estates of Windsor Ridge Homeowners' Association, Inc.; | (a) Enter an order declaring that Trustee is held harmless from any and all claims made against the Trustee by the Windsor Ridge subdivision, Windsor Ridge Homeowners' Association, Windsor Ridge Homeowners' Association, Inc. and/or Estates of Windsor Ridge Homeowners' Association, Inc.; |
| (2) Enter an order declaring void the purported Declaration or, in the alternative if the Declaration is found to be valid, declare that the Windsor Ridge Homeowners' Association is the "Homeowners Association" of the Windsor Ridge subdivision; | (b) Enter an order declaring the Declaration void, or, in the alternative if the Declaration is found to be valid, declare that the unincorporated Windsor Ridge Homeowners' Association is the "Homeowners Association" of the Windsor Ridge subdivision; |
| (3) Enter an order declaring void all billing statements/invoices, Account History Reports, collection letters/emails, notice for hearing on April 26, 2021, and the hearing on April 26, 2021 and collection demand by Defendants to Trustee. | (c) Enter an order declaring all of the following void: (i) billing statements/invoices, (ii) Account History Reports, (iii) collection letters/emails, (iv) notice for hearing on April 26, 2021, (v) the hearing on April 26, 2021, and |

| Amended Complaint | 2dAC |
|---|---|
| (4) Enter an order declaring void the purported Property Owners' Association Management Certificate of Estates of Windsor Ridge Homeowners', Inc. (Doc. # 25368 Record and Return to Whitten Firm Feb. 26, 2020), the purported Estates of Windsor Ridge Homeowners Association, Inc. MANAGEMENT CERTIFICATE (Doc. # 159435 acting by and through its managing agent, Principal Management Group of North Texas Mark Southall Branch President), the purported Estates of Windsor Ridge Homeowners Association, Inc. MANAGEMENT CERTIFICATE (Doc. # 11270 acting by and through its managing agent, Principal Management Group of North Texas Mark Southall Branch President), the purported Management Agreement, the purported three Amendments to Management Agreement, the purported "Notice of Filing of Dedicatory Instruments for the Estates of Windsor Ridge" with the purported "Covenant Enforcement and Fining Policy," the purported "First Supplement to Notice of Filing of Dedicatory Instruments for Windsor Ridge" with the purported "Bylaws of Windsor Ridge Homeowners' Association, Inc. (organized 11-17-99) (correct name of corporation: Estates of Windsor Ridge Homeowners' Association, Inc.)," the purported "First Amendment to the Bylaws of Windsor Ridge Homeowners' Association Inc. (approved 5-1-03)," all purported Notices of Assessment Liens, and all other invalid acts and documents. | (vi) the collection demand by Defendants to Trustee.<br><br>(d) Enter an order declaring all of the following void: (i) the purported Property Owners' Association Management Certificate of Estates of Windsor Ridge Homeowners' Association, Inc. (Doc. # 25368 Record and Return to Whitten Firm Feb. 26, 2020), (ii) the purported Estates of Windsor Ridge Homeowners Association, Inc. MANAGEMENT CERTIFICATE (Doc. # 159435 acting by and through its managing agent, Principal Management Group of North Texas Mark Southall Branch President), (iii) the purported Estates of Windsor Ridge Homeowners Association, Inc. MANAGEMENT CERTIFICATE (Doc. # 11270 acting by and through its managing agent, Principal Management Group of North Texas Mark Southall Branch President), (iv) the purported Management Agreement, the purported three Amendments to Management Agreement, (v) the purported "Notice of Filing of Dedicatory Instruments for the Estates of Windsor Ridge" with the purported "Covenant Enforcement and Fining Policy," (vi) the purported "First Supplement to Notice of Filing of Dedicatory Instruments for Windsor Ridge" with the |

| Amended Complaint | 2dAC |
|---|---|
| (5) Declare that the unanimity rule is applicable until Windsor Ridge Homeowners' Association may be incorporated and duly organized as a nonprofit corporation. | purported "Bylaws of Windsor Ridge Homeowners' Association, Inc. (organized 11-17-99) (correct name of corporation: Estates of Windsor Ridge Homeowners' Association, Inc.)," (vii) the purported "First Amendment to the Bylaws of Windsor Ridge Homeowners' Association Inc. (approved 5-1-03)," (viii) all purported Notices of Assessment Liens, and (ix) all Defendants' other invalid acts and documents.<br><br>(e) Declare that the unanimity rule is applicable until Windsor Ridge Homeowners' Association may be incorporated and duly organized as a nonprofit corporation.<br><br>(f) Enter an order requiring that any purported homeowners' association be brought into compliance with Texas law and the Declaration. |

As explained above, the Court should conclude that, insofar as the 2dAC's claims are based on Whitten's requests through emails that Wesner pay his assessments, they are not barred by attorney immunity. And, as the Court previously concluded, although Whitten Defendants again argue that the declaratory judgment claim should be dismissed as to them because they have "zero connection to this matter," Dkt. No. 63 at 19, and "most of the relief sought would not affect Whitten

Defendants, Wesner [again] asks the Court to declare void the 'collection letters/emails,' [Dkt. No. 57, ¶ 4.10(c),] some of which were sent by Whitten." Dkt. No. 54 at 31. "Thus, based on the facts alleged, the Court [should not] conclude that Whitten Defendants have 'no connection' to the action" and should again deny the motion to dismiss on these grounds.

## IV.    Texas Debt Collection Act ("TDCA")

As to Wesner's TDCA claim, in ruling on the prior motion to dismiss the Amended Complaint, Judge Boyle explained that

> Wesner asserts claims against "Defendants, jointly and severally," for violations of the Texas Fair Debt Collections Act ("TDCA"), Tex. Fin. Code §§ 392.001–.404. *See* Doc. 38, Am. Compl., ¶¶ 4.03–.03.12. To state a claim under the TDCA, Wesner must plausibly plead "(1) the debt at issue is a consumer debt; (2) Defendants are debt collectors within the meaning of the TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against [Wesner]; and (5) [Wesner] was injured as result of Defendants' wrongful act." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013).
>
> "The TDCA has a two-tiered structure that includes both 'third-party debt collectors' … and 'debt collectors.'" *Genender v. Kirkwood*, 506 S.W.3d 508, 514 (Tex. App. – Houston [1st Dist.] 2016, no pet.) (quoting Tex. Fin. Code § 392.001(6)). One key distinction between the two is whether the person collecting a debt originated the debt. A "third-party debt collector" must be collecting a debt for another. *See* Tex. Fin. Code § 392.001(7) ("'Third-party debt collector' [under the TDCA] means a debt collector, as defined by [the FDCPA]...."); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (holding a "debt collector" under the FDCPA must be collecting a debt for another). By contrast, a "debt collector" must be collecting a debt he originated. *See Scarbrough v. JPMorgan Chase Bank, N.A.*, 2022 WL 2373725, at *10 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, 2022 WL 2359645 (S.D. Tex. June 30, 2022) ("McCarthy & Holthus does not qualify as a debt collector under § 392.001(6) because that section applies only to creditors seeking to collect debts for themselves.") (collecting cases).

The TDCA's definition of "third-party debt collector" borrows the definition of "debt collector" from the FDCPA. Tex. Fin. Code § 392.001(7). It generally does not include an attorney collecting a debt as an attorney. *Id.* However, an attorney does qualify as a third-party debt collector if "the attorney has nonattorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts." *Id.* "In sum, a third-party debt collector under the TDCA includes any debt collector under the FDCPA with the exception of attorneys that meet certain circumstances." *Scarbrough*, 2022 WL 2373725, at *10.

By contrast, a "debt collector" is "a person who directly or indirectly engages in debt collection...." Tex. Fin. Code § 392.001(6). Under the statute, "debt collection" is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). Although the TDCA does not explicitly state that a "debt collector" is a person who engages in debt collection of a debt they originated, courts have given the TDCA this construction to reconcile the statute's somewhat circular terminology. *See, e.g.*, *Scarbrough*, 2022 WL 2373725, at *10 (collecting cases).

....

Whitten Defendants argue Wesner's TDCA claims should be dismissed because Wesner has not plausibly alleged Whitten Defendants are debt collectors or third-party debt collectors under the statute. *See* Doc. 40, Whitten Mot., ¶¶ 26–29. Specifically, Whitten Defendants argue Wesner has not alleged that (1) Whitten Defendants were attempting to collect a debt Wesner owed to them or (2) Whitten Defendants have any nonattorney employees that regularly engage in debt collection. *Id.* ¶¶ 26–27. Wesner does not respond to these arguments. *See* Doc. 50, Resp., 6.

The Court agrees that Wesner has not plausibly alleged Whitten Defendants are "debt collectors" under the TDCA. Because Wesner has not alleged Whitten Defendants are creditors attempting to collect a debt for themselves, he has not alleged Whitten Defendants are "debt collectors" under the TDCA. *See, e.g.*, *Scarbrough*, 2022 WL 2373725, at *10.

Neither has he alleged Whitten Defendants are "third-party debt collectors" under the TDCA. As explained in Section B, *supra*, Whitten Defendants are not "debt collectors" under the FDCPA because Wesner has not shown that Whitten Defendants' principal purpose is debt collection or that they regularly collect debts. And Wesner has not alleged that Whitten Defendants "ha[ve] nonattorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly

make contact with debtors for the purpose of collection or adjustment of debts." *See* Tex. Fin. Code § 392.001(7). Therefore, Wesner has not plausibly alleged that Whitten Defendants are "debt collectors" or a "third-party debt collectors" under the TDCA, and the Court **DISMISSES** Wesner's claims against Whitten Defendants for breach of the TDCA. [Within the Fifth Circuit, there is a split of authority concerning whether attorneys are immune from suit for violations of the TDCA. *See Scarbrough*, 2022 WL 2373725, at *9 (collecting cases). The Fifth Circuit has not yet addressed the issue. Because Wesner fails to state a claim against Whitten Defendants for violation of the TDCA, the Court does not address the question.]

Dkt. No. 54 at 15-17 (footnote omitted).

Whitten Defendants now argue, as to the 2dAC, that "Whitten is immune from Wesner's Texas Debt Collection Act claims, and regardless he is neither a 'debt collector' nor a 'third-party debt collector' under the TDCA":

> (34) Wesner failed to amend his Complaint to cure reasons the Court relied on for dismissing Wesner's TCDA action against Whitten. *See* Wesner v. Southall, 2023 U.S. Dist. LEXIS 67392, at *21-22 (N.D. Tex. Apr. 18, 2023) (Boyle, J.).
>
> (35) Wesner asserts claims under the Texas Debt Collection Act. Tex. Fin. Code §§ 392.001, et seq. ("TDCA"). Doc. 57 ¶ 4.23–.36. Attorney immunity bars these claims, and regardless, Whitten is neither a "debt collector" nor a "third party debt collector."
>
> (36) First, this Court explained at length Wesner's prior TDCA pleading deficiencies against Whitten. Doc. 54 pp. 16–17. Wesner has not fixed them.
>
> (37) Wesner instead has realleged them – paragraph for paragraph – nearly identical from the First Amended Petition. Compare First Amd. Compl. Doc. 38 ¶¶ 4.03–.03.12, with Second Amd. Compl. Doc. 27, ¶¶ 4.23–.36 (no changes except for splitting the introductory paragraph into two paragraphs, adding "the" before "Trustee," removing "purported" before "Declaration," and nonsubstantive changes from Doc. 38 ¶ 4.03.5 to Doc. 57 ¶ 4.29). Wesner's inability to meet the pleading burden even when this Court has provided guidance amounts to waiver of the claim. But even if it didn't, Wesner still fails to state a claim.
>
> (38) The TDCA expressly excludes attorneys from the definition of "third-party debt collector" unless the attorney meets specific

requirements related to nonattorney employees. Tex. Fin. Code § 392.001(7). By setting forth specific requirements for attorney liability, the Texas Legislature therefore did not impliedly remove the immunity defense and, instead, reinforces that immunity under the TDCA is an available defense. *Taylor*, 644 S.W.3d at 649.

(39) Regardless whether attorney immunity protects Whitten from liability under the TDCA, Whitten is still not liable to Wesner because Whitten is not a debt collector or third-party debt collector. The TDCA defines "Debt collector" as:

> a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts.

Tex. Fin. Code § 392.001(6). Whitten is certainly not a debt collector in this case because Wesner has alleged no debt owed to Whitten by Wesner that Whitten was attempting to collect. Instead, Wesner alleges that Whitten was collecting debts for the HOA.

(40) A "Third-party debt collector" under the TDCA is:

> a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:
>
> > (A) are regularly engaged to solicit debts for collection; or
> > (B) regularly make contact with debtors for the purpose of collection or adjustment of debts.

Tex. Fin. Code § 392.001(7). Wesner fails to establish that Whitten is a third-party debt collector under the TDCA because there is no showing or allegation that Whitten has any nonattorney employees that regularly engage in debt collection.

(41) Indeed, Wesner's Second Amended Complaint lists only one instance of Whitten engaging in alleged debt collection by sending "three different emails" asking Wesner to "Please pay your assessments." Doc. 57 ¶ 3.120. This is far from debt collection but is instead the actions of an attorney representing a client in an ongoing dispute over Wesner's unfounded dispute over the validity of his HOA assessments.

(42) While this Court observed that requests for payment can be made by nonlawyers, any e-mail from Whitten to Plaintiff requesting Wesner to pay his assessments would not be foreign to Whitten's duties as attorney. *Wesner v. Southall*, 2023 U.S. Dist. LEXIS 67392, at *12-13 ("Many attorneys and law firms engage in collection efforts in the course of their representation of a client, as Whitten likely did in this case.");

*Cantey Hanger, LLP*, 467 S.W.3d at 485 (preparation of bill of sale is "not foreign to the duties of an attorney").

(43) Attorney immunity bars claims by nonclients for "acts taken and communications made to facilitate the rendition of legal services." *Alpert*, 178 S.W.3d at 408 (emphasis added). As the Texas Supreme Court noted, "making a demand on a client's behalf ... is also within the realm of legal representation." *Taylor*, 644 S.W.3d at 649 (citing *Youngkin*, 546 S.W.3d at 684 and *Highland Cap. Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *6 (Tex. App. – Dallas Jan. 14, 2016, pet. denied)). Thus, Whitten's email communications, even those asking Wesner to "Please pay your assessments," are protected through attorney immunity.

(44) Attorney immunity bars Wesner's TDCA claims against Whitten, but even if it does not, Whitten is neither a debt collector nor a third-party debt collector under the TDCA. The Court should therefore dismiss Wesner's TDCA claims against Whitten.

Dkt. No. 63 at 19-23 (footnotes omitted).

Again, a side-by-side comparison of the Amended Complaint's allegations with the 2dAC's corresponding allegations will be helpful in considering Whitten Defendants' current motion to dismiss in light of the Court's ruling on the allegations on Whitten Defendants' prior motion to dismiss.

| Amended Complaint | 2dAC |
| --- | --- |
| 4.03. Unlike the FDCPA, the TFDCA applies not only to third parties attempting to collect a debt on behalf of another person, but also to creditors who are attempting to collect debts on behalf of themselves, which would include an HOA. Trustees' TFDCA claim is not barred by the 2-yeaar statute of limitations. The unauthorized collection letter is dated 2-28-21. The Zoom hearing to collect was 4-26-21. The unauthorized invoice for $836 was due 4/1/22. The Complaint was filed 4/26/22. | 4.23. Unlike the FDCPA, the TFDCA applies not only to third parties attempting to collect a debt on behalf of another person, but also to creditors who are attempting to collect debts on behalf of themselves, which would include an HOA. 4.24. The Trustees' TFDCA claim is not barred by the two-year statute of limitations. The unauthorized collection letter is dated February 28, 2021. The Zoom hearing to collect occurred on April 26, 2021. The unauthorized invoice for $836 was due April 1, 2022. |

| Amended Complaint | 2dAC |
|---|---|
| | The Trustee filed this action on April 26, 2022. |
| 4.03.1. Defendants' joint and several actions, conduct and practices have been an attempt to collect the unauthorized assessments and charges from Trustee. | 4.25. Defendants' joint and several actions, conduct and practices have been an attempt to collect the unauthorized assessments and charges from the Trustee. |
| 4.03.2. Defendants, jointly and severally, have violated TFDCA §§ 392.301(3), 392.303(2), and 392.304(a)(1)(A)(4), (6), (7), (8), (12), (14) and (19). | 4.26. Defendants, jointly and severally, have violated TFDCA §§ 392.301(3), 392.303(2), and 392.304(a)(1)(A)(4), (6), (7), (8), (12), (14) and (19). |
| 4.03.3. Southall, Whitten, Whitten Firm, Associa, PMG and CSSC are each a debt collector pursuant to TFDCA § 392.01. | 4.27. Southall, Whitten, Whitten Firm, Associa, PMG and CSSC are each a debt collector pursuant to TFDCA § 392.01. |
| 4.03.4. Defendants, jointly and severally, failed to refrain from engaging in prohibited debt collection practices when attempting to collect the unauthorized assessments and charges from Trustee including, without limitation, the use of unfair or unreasonable means and the fraudulent, deceptive and misleading representations that the unauthorized assessments and charges were legally due and owing by Trustee. | 4.28. Defendants, jointly and severally, failed to refrain from engaging in prohibited debt collection practices when attempting to collect the unauthorized assessments and charges from the Trustee, including, without limitation, the use of unfair or unreasonable means and the fraudulent, deceptive and misleading misrepresentations that the unauthorized assessments and charges were legally due and owing by Trustee. |
| 4.03.5. A homeowners association may only assess charges or fees to a homeowner if its Declaration expressly provides for it. The Declaration was recorded before Estates was incorporated. Estates is not mentioned in the Declaration. Estates is not the HOA for the Windsor Ridge owners. | 4.29. Estates is a debt collector under the TDCA. A homeowners' association may only assess charges or fees to a homeowner if its Declaration expressly provides for it. The Declaration was recorded before Estates was incorporated. Estates is not mentioned in the Declaration. Estates is not the |

| Amended Complaint | 2dAC |
|---|---|
| Trustee is not a member of Estates. The purported Declaration does not authorize Estates to attempt to collect assessments or charges from Trustee. Windsor Ridge Homeowners' Association is the "Homeowners Association" for the Windsor Ridge owners, has not been incorporated, and is not Estates or fictitious Windsor Ridge Homeowners' Association, Inc. 4.03.6. Defendants, jointly and severally, have used unfair and unconscionable means by attempting to collect the unauthorized assessments and charges in violation of the purported Declaration §§ 4.3, 4.5(f), 4.6 and 4.7. The alleged interest and incidental charges are not expressly authorized by the purported Declaration § 4.7. | HOA for the Windsor Ridge owners. The Trustee is not a member of Estates. The Declaration does not authorize Estates to attempt to collect assessments or charges from the Trustee. Windsor Ridge Homeowners' Association is the "Homeowners Association" for the Windsor Ridge owners, has not been incorporated, and is not Estates or fictitious Windsor Ridge Homeowners' Association, Inc. 4.30. Defendants, jointly and severally, have used unfair and unconscionable means by attempting to collect the unauthorized assessments and charges in violation of the Declaration §§ 4.3, 4.5(f), 4.6 and 4.7. The alleged interest and incidental charges are not expressly authorized by the Declaration § 4.7. |
| 4.03.7. Defendants, jointly and severally, violated TFDCA § 392.304(a)(8) by misrepresenting that the unauthorized assessments and charges are due and payable by Trustee. | 4.31. Defendants, jointly and severally, violated TFDCA § 392.304(a)(8) by misrepresenting that the unauthorized assessments and charges are due and payable by the Trustee. |
| 4.03.8. Defendants, jointly and severally, violated TFDCA § 392.301(a)(3) by misrepresenting to each other that Trustee was and is willfully refusing to pay an alleged undisputed debt. Trustee had disputed the alleged debt as not being due or owing. | 4.32. Defendants, jointly and severally, violated TFDCA § 392.301(a)(3) by misrepresenting to each other that the Trustee was and is willfully refusing to pay an alleged undisputed debt. The Trustee had disputed the alleged debt as not being due or owing. |
| 4.03.9. Defendants, jointly and severally, used fraudulent, deceptive | 4.33. Defendants, jointly and severally, used fraudulent, deceptive, and |

| Amended Complaint | 2dAC |
|---|---|
| and misleading representations as follows:<br><br>    (1) Using written communications that failed to clearly indicate the name of the debt collector and the debt collector's address and phone number when the written notices referred to the alleged, unauthorized consumer debts.<br>    (2) Using written communications that demanded a response to a place other than the alleged creditor's street address or post office box.<br>    (3) Misrepresenting the character, extent and amount of the alleged assessments or charges that were not due or payable by Trustee pursuant to the Declaration §§ 4.3, 4.5(d), 4.5(f), 4.6 and 4.7.<br><br>4.03.10. Defendants, jointly and severally, have been attempting to collect alleged debts not authorized pursuant to purported Declaration §§ 4.3, 4.5(d), 4.5(f), 4.6, and 4.7.<br><br>4.03.11. Southall, Whitten, Whitten Firm, Associa, PMG and CSSC each do not have the required surety bond pursuant to TDCPA § 392.101.<br><br>4.03.12. Trustee is entitled to his damages, injunctive relief, attorneys' fees, costs and interest against Southall, Whitten, Whitten Firm, Associa, PMG and CSSC, jointly and severally, pursuant to TFDCA § | misleading misrepresentations as follows:<br><br>    (1) Using written communications that failed to clearly indicate the name of the debt collector and the debt collector's address and phone number when the written notices referred to the alleged, unauthorized consumer debts.<br>    (2) Using written communications that demanded a response to a place other than the alleged creditor's street address or post office box.<br>    (3) Misrepresenting the character, extent and amount of the alleged assessments or charges that were not due or payable by Trustee pursuant to the Declaration §§ 4.3, 4.5(d), 4.5(f), 4.6 and 4.7.<br><br>4.34. Defendants, jointly and severally, have been attempting to collect alleged debts not authorized pursuant to Declaration §§ 4.3, 4.5(d), 4.5(f), 4.6, and 4.7.<br><br>4.35. Southall, Whitten, Whitten Firm, Associa, PMG and CSSC each do not have the required surety bond pursuant to TDCPA § 392.101.<br><br>4.36. The Trustee is entitled to his damages, injunctive relief, attorneys' fees, costs and interest against Southall, Whitten, Whitten Firm, Associa, PMG and CSSC, jointly and severally, pursuant to TFDCA § |

| Amended Complaint | 2dAC |
|---|---|
| 392.403 and the DTPA that is tied in by the TFDCA § 393.404. | 392.403 and the DTPA that is tied in by the TFDCA § 393.404. |

The Court previously concluded that Wesner has not plausibly alleged Whitten Defendants are "debt collectors" or "third-party debt collectors" under the TDCA because Wesner has not alleged Whitten Defendants are creditors attempting to collect a debt for themselves and has not alleged that Whitten Defendants have nonattorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts. Dkt. No. 54 at 17-18.

As Whitten Defendants point out and the comparison above confirms, Wesner did not amend his prior complaint to cure – in the 2dAC – the reasons that the Court relied on for dismissing Wesner's TCDA claim against Whitten Defendants but instead repeated the same allegations from his Amended Complaint.

And, for the same reasons that the Court previously explained, the Court should dismiss Wesner's claims against Whitten Defendants for breach of the TDCA. *See* Dkt. No. 54 at 15-18.

V.    <u>Tortious Interference with Contract</u>

As to Wesner's tortious interference with contract claim, in ruling on the prior motion to dismiss the Amended Complaint, Judge Boyle explained:

> Wesner claims Defendants, jointly and severally, "intentionally interfered with [Wesner's] contractual rights under the [CCR]." Doc. 38, Am. Compl., ¶¶ 4.08–.08.2. Under Texas law, the elements of tortious

interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "[A] person must be a stranger to a contract to tortiously interfere with it...." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997).

....

Whitten Defendants argue that Wesner's tortious interference claims must be dismissed because they are barred by attorney immunity and fail to state a claim. Doc. 40, Whitten Mot., ¶¶ 48–49. Wesner does not reply to this contention. *See* Doc. 50, Resp., 8–9. The Court agrees that Wesner fails to allege how Whitten Defendants' actions proximately caused his alleged injury, the diminution of the fair market value of the Property. Thus, Wesner has not plausibly alleged a tortious interference claim against Whitten Defendants. Wesner's claims against Whitten Defendants for tortious interference with contract are **DISMISSED**.

Dkt. No. 54 at 25-27 (footnote omitted).

Whitten Defendants now argue, as to the 2dAC, that they are "immune from Wesner's intentional interference with contracts claims, which are nevertheless barred because Whitten cannot interfere with a contract to which his former client is a party":

(45) Wesner has failed to amend his Complaint to cure the reasons the Court dismissed his tortious interference action against Whitten. *See Wesner v. Southall*, 2023 U.S. Dist. LEXIS 67392, at *35 (N.D. Tex. Apr. 18, 2023) (Boyle, J.).

(46) Wesner brings claims against Whitten for tortious interference "with the Trustee's contractual rights under the Declaration." Doc. 57 ¶ 4.74. Whitten is immune from this claim. One of the alleged interferences is that the HOA "engag[ed] attorneys without authority." Doc. 57 ¶ 4.74. On its face, Wesner affirmatively states that Whitten's role in the alleged interference was as the HOA's attorney adversarial to Wesner in all these matters. Whitten's representation therefore consisted of actions "the kind of conduct" attorneys undertake while discharging their professional duties to a client, *Haynes & Boone,*

*LLP*, 631 S.W.3d at 67, using "the office, professional training, skill, and authority of an attorney." *Cantey Hanger, LLP*, 467 S.W.3d at 481-82.

(47) Wesner does not specify which of these actions Whitten directly contributed to or in what way Whitten harmed him by doing so. As noted throughout the Second Amended Complaint, Whitten at all times represented the HOA adversarial to Wesner in all these matters. Whitten's representation consisted of actions "the kind of conduct" attorneys undertake while discharging their professional duties to a client, *Haynes & Boone, LLP*, 631 S.W.3d at 67, using "the office, professional training, skill, and authority of an attorney." *Cantey Hanger, LLP*, 467 S.W.3d at 481-82. Whitten is therefore immune.

(48) Second, even if immunity does not apply, Wesner's Second Amended Complaint still fails to state a claim. The elements of tortious interference with contracts are: "(1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss." *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 832-833 (Tex. App. – Dallas 2006, no pet.). Wesner provides no allegations against Whitten on any of these elements.

(49) Moreover, the litany of complaints, as noted above, relate to actions taken in furtherance of enforcing or complying with the CCRs. A party or its agent cannot rightly be said to 'interfere' with a contract to which they are a party or to which they have an enforcement right. *See e.g.*, *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017) (A defendant must be a stranger to a contract to tortiously interfere with it; a defendant "cannot tortiously interfere with its own contract"). The Court should therefore dismiss Wesner's interference claims.

Dkt. No. 63 at 23-24.

Again, a side-by-side comparison of the Amended Complaint's allegations with the 2dAC's corresponding allegations will be helpful in considering Whitten Defendants' current motion to dismiss in light of the Court's ruling on the allegations on Whitten Defendants' prior motion to dismiss.

| Amended Complaint | 2dAC |
|---|---|
| 4.08. Intentional Interference with Contracts. The paragraphs above are | 4.74. Southall, Whitten, Whitten Firm, Associa, PMG and CSSC have |

| Amended Complaint | 2dAC |
|---|---|
| incorporated herein by reference. Southall, Whitten, Whitten Firm, Associa, PMG and CSSC have intentionally interfered with Trustee's contractual rights under the contracts to Trustee's detriment and damage including, without limitation, Associa - PMG wrongfully acting as the managing agent; wrongfully using the name Windsor Ridge Homeowners' Association, Inc. as the HOA; wrongfully using Estates as the HOA; attempting to collect unauthorized payments from Trustee; recording unauthorized Notices of Assessment Lien and other unauthorized instruments; engaging attorneys without authority; failing to keep records, including financial records, reasonably available for inspection and copying by Trustee as required by Texas law; obfuscating their involvement in Trustee's affairs to the detriment and damage of Trustee; by not computerizing transactions; disclosing Trustee's private information without authorization; depositing Trustee's funds in a PMG non-custodial account; interfering with Trustee's rights to review and copy records including ESI and financial records relating to Windsor Ridge subdivision; not having a duly elected Board pursuant to the purported Declaration § 4.3 to supervise; ignoring the mandatory provisions of the purported Declaration; charging Trustee with amounts not authorized by the purported Declaration §§ 4.3, 4.5(f), 4.6 and 4.7; by sending unauthorized invoices, account histories and letters to | intentionally interfered with the Trustee's contractional rights under the Declaration (to the extent it is found to be valid) to the Trustee's detriment and damage including, without limitation: (a) Associa - PMG wrongfully acting as the managing agent; (b) wrongfully using the name Windsor Ridge Homeowners' Association, Inc. as the HOA; (c) wrongfully using Estates as the HOA; (d) attempting to collect unauthorized payments from the Trustee and other lot owners; (e) recording unauthorized Notices of Assessment Lien and other unauthorized instruments; (f) engaging attorneys without authority; (g) failing to keep records, including financial records, reasonably available for inspection and copying by the Trustee as required by Texas law; (h) obfuscating their involvement in the Trustee's affairs to the detriment and damage of the Trustee; (i) by not computerizing transactions; (j) disclosing the Trustee's private information without authorization; (k) depositing the Trustee's funds in a PMG non-custodial account; (l) interfering with the Trustee's rights to review and copy records including ESI and financial records relating to Windsor Ridge subdivision; (m) not having a duly elected Board pursuant to the Declaration § 4.3 to supervise; ignoring the mandatory provisions of the Declaration; (n) charging the Trustee with amounts not authorized by the Declaration §§ 4.3, 4.5(f), 4.6 and 4.7; (o) by sending unauthorized invoices, account histories and letters to |

| Amended Complaint | 2dAC |
|---|---|
| Trustee; making improper collection demands on Trustee; and holding from Dallas, TX the April 26, 2021 Zoom hearing that did not comply with Texas law. | the Trustee; (p) making improper collection demands on the Trustee; and (q) holding from Dallas, TX the April 26, 2021 Zoom hearing that did not comply with Texas law. |
| 4.08.1. The contracts are (1) valid; (2) Trustee tendered performance; (3) Defendants, jointly and severally, breached the contracts; and (4) Trustee has sustained damages as a result of the breaches including the diminution of the fair market value of 2312 Lookout Lane and the inconvenience as a result of the wrongful conduct of Defendants, jointly and severally. Trustee is entitled to recover his damages, attorneys' fees, costs and interest from Defendants, jointly and severally. | 4.75. If the contracts are found to be valid, the Trustee pleads in the alternative that (1) the contracts are valid; (2) the Trustee tendered performance; (3) Defendants, jointly and severally, interfered with the contracts; and (4) the Trustee has sustained damages as a result thereof including the diminution of the fair market value of 2312 Lookout Lane and the inconvenience as a result of the wrongful conduct of Defendants, jointly and severally. |
| 4.08.2. Defendants', joint and several, interferences have been to the detriment and damage of Trustee. Trustee is entitled to recover his damages, attorneys' fees, costs and interest from Defendants, jointly and severally. | 4.76. The Trustee is entitled to recover his damages, attorneys' fees, costs, and interest from Defendants, jointly and severally. |

The Court previously concluded that Wesner failed to allege how Whitten Defendants' actions proximately caused his alleged injury, the diminution of the fair market value of the Property, and so Wesner has not plausibly alleged a tortious interference claim against Whitten. *See* Dkt. No. 54 at 27.

As Whitten Defendants point out and the comparison above confirms, Wesner did not amend his prior complaint to cure – in the 2dAC – the reasons that the Court

relied on for dismissing his tortious interference claim against Whitten Defendants but instead repeated the same allegations from his Amended Complaint.

And, for the same reasons that the Court previously explained, the Court should dismiss Wesner's claims against Whitten Defendants for tortious interference with contract. *See* Dkt. No. 54 at 25-27.

V.  <u>Fraud and Conspiracy to Commit Fraud</u>

As to Wesner's Fraud and Conspiracy to Commit Fraud claim, in ruling on the prior motion to dismiss the Amended Complaint, Judge Boyle explained:

> Wesner asserts claims for fraud and conspiracy to commit fraud against "Defendants, jointly and severally," alleging they "engaged in a conspiracy to fraudulently collect unauthorized assessments and charges from [Wesner] and usurp the powers and rights of [the real HOA]." Doc. 38, Am. Compl., ¶¶ 4.09–.09.2. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).
>
>> The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.
>
> *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Defendants argue that Wesner has failed to plausibly allege the elements of a fraud claim. *See, e.g.*, Doc. 40, Whitten Mot., ¶ 52; Doc. 41, Associa Mot., ¶¶ 32–33. Associa, CSSC, PMG, Southall, and Estates of Windsor Ridge specifically claim Wesner has not plausibly alleged reliance. *See, e.g.*, Doc. 41, Associa Mot., ¶ 32. Wesner responds that he relied by paying the $200 assessment. Doc. 50, Resp., 9. To show reliance, "the plaintiff must show that [he] actually relied on the defendant's representation and, also, that such reliance was justifiable." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). A person cannot actually or justifiably rely on a representation they know

to be false. *See, e.g., Darnell v. Rogers*, 588 S.W.3d 295, 305 (Tex. App. – El Paso 2019, no pet.). "In measuring justifiability, [courts] must inquire whether, given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (internal quotation and alteration omitted). "[A] person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Id.* (internal quotations omitted). However, a claimant's "mere suspicions" of that a representation is false are not evidence that reliance was unjustifiable. *See Advocare Int'l LP v. Horizon Lab'ys, Inc.*, 524 F.3d 679, 699 (5th Cir. 2008).

The Court agrees that Wesner has alleged reliance against Southall and PMG by alleging that he sent Southall and PMG a check for $200 to pay his assessment. *See* Doc. 38, Am. Compl., ¶ 3.37. But this check was sent only "in reliance on [Wesner's] gentleman's agreement with Mark for PMG." *See id.* Because Wesner has failed to "state with particularly the circumstances constituting" reliance as to the remaining Defendants, the Court **DISMISSES** Wesner's claims for fraud against Associa, CSSC, Whitten Defendants, and Estates of Windsor Ridge. *See* Fed. R. Civ. P. 9(b).

Southall and PMG argue, without citation, "[P]aying under protest cannot form the basis of a fraud claim because Wesner clearly possessed knowledge of the issues about-which he now complains, otherwise he would not have made payment under protest." Doc. 42, PMG Mot., ¶ 33; Doc. 43, Southall Mot., ¶ 35. While Wesner was clearly suspicious of PMG and Southall, these suspicions, without more, do not negate his allegations of reliance. *See Advocare Int'l*, 524 F.3d at 699. Wesner does not allege that he knew at the time that Southall or PMG's alleged misrepresentations were false. *See generally* Doc. 38, Am. Compl., ¶¶ 3.01–.121. Nor do Southall and PMG identify any "red flags" that indicated reliance on their representations was unwarranted. *See* Doc. 42, PMG Mot., ¶ 33; Doc. 43, Southall Mot., ¶ 35.

The elements of a civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Civil conspiracy is a "'derivative tort,' meaning it depends on some underlying tort or other illegal act." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-41 (Tex. 2019). As such, "a civil conspiracy claim is connected to the underlying tort and survives or fails

-51-

alongside it." *Id.* at 141. Thus, "if a plaintiff cannot adequately allege with particularity or ultimately prove an element of the underlying fraud, [a claim for conspiracy to commit fraud] also fails." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 795 (S.D. Tex. 2007). Because Wesner has failed to state a claim for fraud against Associa, CSSC, Whitten Defendants, and Estates of Windsor Ridge, the Court also **DISMISSES** Wesner's claims for conspiracy to commit fraud as to these Defendants.

Dkt. No. 54 at 27-30.

Whitten Defendants now argue, as to the 2dAC, that, "[t]o the extent the Court permits any conspiracy allegation to apply to Whitten, Whitten responds that Wesner fails to plead requisite factual allegations to support both the conspiracy and the elements of the underlying cause of action (including failing to do so with the particularity required for allegations of fraud)." Dkt. No. 63 at 26-27 (citing *Wesner v. Southall*, 2023 U.S. Dist. LEXIS 67392, at *35-*36). And Whitten Defendants argue that, "as a matter of law," "Whitten could not conspire with his client for conduct occurring within the scope of representing its interests." Dkt. No. 63 at 27 (citing *Petricevic v. Shin*, 2021 U.S. Dist. LEXIS 122014 (D. Haw. June 30, 2021)).

Again, a side-by-side comparison of the Amended Complaint's allegations with the 2dAC's corresponding allegations will be helpful in considering Whitten Defendants' current motion to dismiss in light of the Court's ruling on the allegations on Whitten Defendants' prior motion to dismiss.

| Amended Complaint | 2dAC |
|---|---|
| 4.09. Continuing Fraud and Conspiracy to Commit Fraud. The paragraphs above are incorporated by reference. Defendants engaged in a conspiracy to | 4.77. Defendants engaged in a conspiracy to fraudulently collect unauthorized assessments and charges from the Trustee and to usurp the |

| Amended Complaint | 2dAC |
|---|---|
| fraudulently collect unauthorized assessments and charges from Trustee and to usurp the powers and rights of Windsor Ridge Homeowners' Association. Defendants, jointly and severally, have used the fraudulent devices of Estates and Windsor Ridge Homeowners' Association, Inc. to attempt to collect unauthorized debts, assessments and charges from Trustee and to control the Windsor Ridge subdivision to the detriment of Trustee. | powers and rights of Windsor Ridge Homeowners' Association. Defendants, jointly and severally, have used the fraudulent devices of Estates and Windsor Ridge Homeowners' Association, Inc. to attempt to collect unauthorized debts, assessments, and charges from the Trustee and to control the Windsor Ridge subdivision to the detriment of the Trustee. |
| 4.09.1. The material misrepresentations and the representations by material nondisclosures to Trustee are alleged in the Statement of Facts above. Each material misrepresentation and nondisclosure was (1) false; (2) made by Defendants, jointly and severally, that knew each representation was false or made recklessly without knowledge of the truth; (3) made by Defendants, jointly and severally, with the intent that Trustee act on each material misrepresentation; (4) Trustee relied on material misrepresentations; and (5) each of these material misrepresentations caused Trustees' injury. | 4.78. The material misrepresentations and the misrepresentations by material nondisclosures to the Trustee are alleged in the Statement of Facts above. Each material misrepresentation and nondisclosure was (1) false; (2) made by Defendants, jointly and severally, that knew each misrepresentation was false or made recklessly without knowledge of the truth; (3) made by Defendants, jointly and severally, with the intent that the Trustee act on each material misrepresentation; (4) the Trustee relied on material misrepresentations; and (5) each of these material misrepresentations caused the Trustees' injury. |
| 4.09.2. Defendants combined to accomplish the collection of unauthorized assessments and charges from Trustee. The Defendants reached a meeting of minds on the course of action and took avert acts in pursuit of the collection of unauthorized assessments and charges and engage in the unauthorized management of the | 4.79. Defendants conspired and combined to accomplish the collection of unauthorized assessments and charges from the Trustee. The Defendants reached a meeting of minds on the course of action and took avert acts in pursuit of the collection of unauthorized assessments and charges and engage in the unauthorized management of the |

-53-

| Amended Complaint | 2dAC |
|---|---|
| Windsor Ridge subdivision to Trustee's detriment and damage. | Windsor Ridge subdivision to the Trustee's detriment and damage. |

The Court previously concluded that Wesner failed to state with particularly the circumstances constituting reliance as to Whitten Defendants and so failed to state a claim for fraud against Whitten Defendants – and, having failed to state a claim for fraud against Whitten Defendants, also therefore failed to state a claim for conspiracy to commit fraud as to Whitten Defendants.

As the comparison above confirms, Wesner did not amend his prior complaint to cure – in the 2dAC – the reasons that the Court relied on for dismissing his fraud and conspiracy to commit fraud claims against Whitten Defendants but instead repeated the same allegations from his Amended Complaint.

And, for the same reasons that the Court previously explained, the Court should dismiss Wesner's claims against Whitten Defendants for fraud and conspiracy to commit fraud. *See* Dkt. No. 54 at 27-30.

## VII.    Injunctive Relief

As to Wesner's request for injunctive relief, Whitten Defendants argue, as to the 2dAC, that "[a]n injunction against [Whitten Defendants] is inappropriate because Whitten is not engaging in any actions the Court can enjoin":

> (50) As noted throughout this litigation, Whitten ceased representing the HOA in mid-2021. *See, e.g.*, *Wesner v. Southall*, 2023 U.S. Dist. LEXIS 67392, at *6 (N.D. Tex. Apr. 18, 2023) (Boyle, J.). Whitten is a full-time educator and accepts only select clients and matters. An injunction against Whitten – an attorney with no ongoing

connection to the matter – would be a useless act because Whitten already is not engaging and will not engage in any of the alleged wrongdoings that Wesner complains others are engaged in. Wesner fails to allege any ongoing conduct by Whitten that needs to be restrained. *PostNet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1106 (D. Colo. 2021) (Injunction is "not necessary or appropriate" for actions that aren't occurring). Whitten's only connection to Windsor Ridge is as a party to this lawsuit. Simply put, Whitten is doing nothing for the Court to enjoin. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Bauer*, 341 F.3d at 358 (citations and quotations omitted). Whitten poses no ongoing threat to Wesner because Whitten has not represented the HOA for over two years. Any injunction against Whitten would be redundant because it is undisputed that Whitten acted solely in a representative capacity. ....

(58) Because Wesner failed to plausibly state any cause of action against Whitten, any request by Wesner for declaratory or injunctive relief as to Whitten is fatally defective. Moreover, Wesner did not allege any right or harm that would be ripe for declaratory or injunctive relief against Whitten.

Dkt. No. 63 at 25, 29 (footnotes omitted).

Again, a side-by-side comparison of the Amended Complaint's allegations with the 2dAC's corresponding allegations will be helpful in considering Whitten Defendants' current motion to dismiss in light of the Court's ruling on the allegations on Whitten Defendants' prior motion to dismiss.

| Amended Complaint | 2dAC |
|---|---|
| 4.11. Application for Injunctive Relief. The Paragraphs above are incorporated herein by reference. Pursuant to Fed. R. Civ. P. 65, Plaintiff seeks prohibitory and mandatory injunctive relief as follows: | 4.80. Pursuant to Fed. R. Civ. P. 65, Plaintiff seeks prohibitory and mandatory injunctive relief as follows: |

| Amended Complaint | 2dAC |
|---|---|
| (1) Enter a permanent injunction prohibiting Defendants, jointly and severally, from interfering with the purported Declaration and Windsor Ridge Homeowners' Association as the Homeowners' Association for the Windsor Ridge subdivision and, further, enter an order mandating that Defendants, jointly and severally, must comply with the purported Declaration Article IV. | (a) Enter a permanent injunction prohibiting Defendants, jointly and severally, from interfering with the Declaration and Windsor Ridge Homeowners' Association as the Homeowners' Association for the Windsor Ridge subdivision and, further, enter an order mandating that Defendants, jointly and severally, must comply with the Declaration Article IV. |
| (2) Enter a permanent injunction prohibiting Defendants, jointly and severally, from attempting to collect any assessment or charge not authorized by a duly elected Board's formal action in compliance with the Declaration Article IV. | (b) Enter a permanent injunction prohibiting Defendants, jointly and severally, from attempting to collect any assessment or charge not authorized by a duly elected Board's formal action in compliance with the Declaration Article IV. |
| (3) Enter a permanent injunction prohibiting Defendants, jointly and severally, from using the name Windsor Ridge Homeowners' Association, Inc. | (c) Enter a permanent injunction prohibiting Defendants, jointly and severally, from using the name Windsor Ridge Homeowners' Association, Inc. |
| (4) Enter an order directing Defendants, jointly and severally, to turn over all books and records including the complete ESI and financial books and records, to Trustee for inspection for the time required by Trustee to examine the books and records and copying as requested by Trustee, and, further, ordered that Defendants, jointly and severally, cooperate and promptly furnish the complete | (d) Enter an order directing Defendants, jointly and severally, to turn over all books and records including the complete ESI and financial books and records, to Trustee for inspection for the time required by Trustee to examine the books and records and copying as requested by Trustee, and, further, ordered that Defendants, jointly and severally, cooperate and promptly furnish the complete |

| Amended Complaint | 2dAC |
|---|---|
| ESI from the inception on a storage device and in a format compatible with Trustee and his attorney's computer software application, operating system and word processor. | ESI from the inception on a storage device and in a format compatible with Trustee and his attorney's computer software application, operating system and word processor. |
| (5) Enter a permanent mandatory injunction directing Southall, Associa, PMG and CSSC, jointly and severally, to provide to Trustee written disclosures of any past, present or future actual or perceived conflict of interest including ownership of any companies that has provided ancillary services to the Windsor Ridge subdivision, Windsor Ridge Homeowners' Association, Windsor Ridge Homeowners' Association, Inc. or Estates. | (e) Enter a permanent mandatory injunction directing Southall, Associa, PMG and CSSC, jointly and severally, to provide to Trustee written disclosures of any past, present or future actual or perceived conflict of interest including ownership of any companies that has provided ancillary services to the Windsor Ridge subdivision, Windsor Ridge Homeowners' Association, Windsor Ridge Homeowners' Association, Inc. or Estates. |
| 4.11.1. Trustee has suffered and is suffering actual, imminent, irreparable injury since Plaintiff's fee simple right to the use of his property has been interfered with by Defendants' acts and the charging of wrongful, excessive assessment and wrongful charges makes 2312 Lookout Lane unsalable or diminishes in valve particularly with the Associa-PMG wrongfully acting as the management company with its national bad reputation involving, among other things, violation letters, wrongful Notices of Assessment Liens, and | 4.81. The Trustee has suffered and is suffering actual, imminent, irreparable injury since Plaintiff's fee simple right to the use of his property has been interfered with by Defendants' acts and the charging of wrongful, excessive assessment and wrongful charges makes 2312 Lookout Lane unsalable or diminishes in valve particularly with the Associa-PMG wrongfully acting as the management company with its national bad reputation involving, among other things, violation letters, wrongful Notices of Assessment Liens, and |

| Amended Complaint | 2dAC |
|---|---|
| foreclosures involving minor violations of strict rules. The remedies available at law, such as monetary damages, are inadequate to compensate for the injuries suffered by Plaintiff. There is a substantial likelihood that Plaintiff will succeed on the merits of the case. The equitable remedies requested by the Plaintiff is warranted upon consideration of the balance of hardship between Trustee and Defendants and the permanent injunction will not adversely affect public policy or interests of public. Plaintiff is willing to post a bond. | foreclosures involving minor violations of strict rules. The remedies available at law, such as monetary damages, are inadequate to compensate for the injuries suffered by Plaintiff. There is a substantial likelihood that Plaintiff will succeed on the merits of the case. The equitable remedies requested by the Plaintiff is warranted upon consideration of the balance of hardship between the Trustee and Defendants and the permanent injunction will not adversely affect public policy or interests of public. Plaintiff is willing to post a bond. |

Although Wesner did not materially amend his injunctive relief allegations, because some of the declaratory judgment claims against Whitten Defendants should survive dismissal, the Court should likewise deny the motion to dismiss Wesner's requests for injunctive relief as they apply to Whitten Defendants. The undersigned cannot agree – as explained above – that Wesner failed to plausibly state any cause of action against Whitten Defendants and so cannot conclude that any request by Wesner for injunctive relief as to Whitten Defendants is fatally defective.

VIII.   <u>Leave to Amend</u>

In ruling on the prior motion to dismiss the Amended Complaint, Judge Boyle explained that "Wesner has not sought leave to amend, but the Court should freely give leave to amend when justice so requires." Dkt. No. 54 at 32 (citing FED. R. CIV.

P. 15(a)). And Judge Boyle noted "that Wesner has already amended his complaint once" but found "it appropriate to give Wesner one final opportunity to amend his complaint." *Id.*

Wesner then filed his 2dAC, with the benefit of Judge Boyle's analysis and rulings on the defendants' prior motion to dismiss his Amended Complaint. *See* Dkt. No. 57. And yet, as explained above, the 2dAC repeated most of the allegations as previously plead in the Amended Complaint. And then Wesner did not file a response to Whitten Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Dkt. No. 63].

The Court already gave "Wesner one final opportunity to amend his complaint," Dkt. No. 54 at 32, and "leave to amend properly may be denied when the party seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Wesner "has already had two opportunities to amend the complaint," *id.*, and he has not sought leave to amend in response to the motions to dismiss his Amended Complaint or to Whitten Defendants' motion to dismiss his 2dAC.

And Wesner "has had the benefit of [Whitten Defendants'] prior motions to dismiss and Judge Boyle's prior ruling to alert him to the problems with his pleadings" and yet "he has failed to cure these deficiencies or otherwise plead sufficient facts to support his" claims against Whitten Defendants in his 2dAC.

*Jamison v. Fluor Fed. Sols., LLC*, No. 3:16-cv-441-S, 2019 WL 460304, at *10 (N.D. Tex. Feb. 6, 2019), *aff'd*, 787 F. App'x 241 (5th Cir. 2019). Under these circumstances, the Court should presume that Wesner "has pleaded his best case at this point and, therefore, [should] not allow him another opportunity to amend his complaint" against Whitten Defendants. *Id.*

Thus, for the claims on which the Court should grant Whitten Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Dkt. No. 63], the dismissal should be with prejudice. *Accord Nichols v. Baylor Rsch. Inst.*, No. 3:19-cv-1883-B, 2020 WL 1158456, at *12 (N.D. Tex. Mar. 10, 2020).

IX.    Conclusion

In sum, all of Wesner's claims against Whitten Defendants should be dismissed with prejudice except for Wesner's claims for declaratory judgment and injunctive relief, which should survive dismissal.

## Recommendation

For the reasons and to the extent explained above, the Court should grant in part and deny in part Defendants Whitten & Whitten, PLLC and Adam T. Whitten's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Dkt. No. 63] and should dismiss with prejudice Plaintiff Charles Thomas Wesner, Jr.'s claims against Defendants Whitten & Whitten, PLLC and Adam Whitten for violations of the Texas Fair Debt Collection Act, for Tortious Interference with Contract, and for Fraud and Conspiracy to Commit Fraud.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 21, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE